387 A.2d 58

**COMMONWEALTH of Pennsylvania, Pennsylvania HUMAN RELATIONS COMMISSION, Appellee,**

v.

**TRANSIT CASUALTY INSURANCE COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 28, 1978.

Decided April 28, 1978.

Robert P. Reed, Harrisburg, for appellant.

Elisabeth S. Shuster, Pa. Human Relations Com., Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

EAGEN, Chief Justice.

This is an appeal from an order of the Commonwealth Court, affirming in part an order of the Pennsylvania Human Relations Commission (Commission) directed against Transit Casualty Insurance Company (Transit).

Transit, by its sales and underwriting agent, Markel Service, Inc. (Markel), had issued commercial motor vehicle liability insurance to Beverage Transportation, Inc. (Beverage), effective from February 18, 1970, to February 18, 1972. Nettie M. Renoll, employed by Beverage as a vehicle driver, was involved in an accident on March 18, 1970, during the period of Transit's insurance coverage, while driving a vehicle of Beverage. Markel notified Beverage that Renoll's insurance coverage would terminate on July 10, 1970, and that she should be relieved of all driving duties by that date. As a result, Renoll's employment with Beverage was terminated on July 10, 1970.

Renoll filed a complaint with the Commission alleging Beverage had discharged her due to her sex. In two amended complaints Renoll named Transit as a respondent and charged Transit with violating Section 5(e) of the Pennsylvania Human Relations Act,[1] which makes it unlawful

"(e) For any person, whether or not an employer, employment agency, labor organization or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

Section 5(a) of the Act, 43 P.S. § 955(a), makes it an unlawful discriminatory practice for any employer to discharge an employee because of that person's sex.

In March, 1972, after its policy with Transit was terminated, Beverage rehired Renoll as a truck driver. Renoll's complaint against Beverage was then withdrawn.

On October 15, 1973, the Commission conducted hearings on Renoll's complaint against Transit. On July 29, 1974, the Commission concluded that Transit, through its agent Markel, had withdrawn insurance coverage for Renoll because of her sex and that Transit's conduct "coerced and compelled Beverage to discharge Renoll." Transit was ordered to cease and desist from such activities and to pay Renoll damages of $12,147.03 with interest for lost pay from July 10, 1970, through February 18, 1972.

Transit filed an appeal in the Commonwealth Court which affirmed the Commission's order but modified the amount of the award to $11,499.49 with interest. We granted allocatur.

1. Act of October 27, 1955, P.L. 744, § 5, as amended by the Act of March 28, 1956, P.L. (1955) 1354, § 1, and as further amended by the Act of February 28, 1961, P.L. 47, § 2, 43 P.S. § 955(e) [Hereinafter: 43 P.S. § - —].

The central issue is the Commission's authority to order a "respondent," who is not the employer of the complainant, to compensate complainant through the payment of lost earnings where that respondent has engaged in an unlawful discriminatory employment practice causing the loss suffered.

However, before reaching that issue, we must determine whether the Commission properly concluded Transit committed an unlawful discriminatory practice in violation of the Act.

## I

As stated in Section 10 of the Human Relations Act, 43 P.S. § 960, our scope of review is governed by the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, § 1, 71 P.S. § 1710.1 *et seq.* [Hereinafter: 71 P.S. § ——], which permits us to set aside or modify the Commission's adjudication only if it "is in violation of the constitutional rights of the appellant, or is not in accordance with law" or if "any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." 71 P.S. § 1710.44. See also *PHRC v. Chester School District*, 427 Pa. 157, 233 A.2d 290 (1967) and *Gorchov Brothers Real Estate v. HRC*, 14 Pa.Cmwlth. 310, 321 A.2d 405 (1974).

■ Transit contends the Commission's finding of an unlawful discriminatory practice is not supported by substantial evidence. The record demonstrates otherwise.

The Commission made the following relevant findings of fact:

"12. Respondent's decision to prohibit the Complainant from driving a truck for Beverage was made with the knowledge that Complainant was a woman.

"13. Respondent's explanation that this decision with regard to Complainant was based solely on the fact that the Complainant was under twenty-five and was consonant with Respondent's policy of taking a 'much closer look at a driver under twenty-five who is involved in an accident' is belied by the record:

a. During the relevant period, at least four male Beverage drivers under twenty-five had been involved in accidents for which they were deemed liable and had not been canceled by Respondent. Respondent offered no acceptable explanation for the disparity in treatment between these males and the Complainant, the sole female driver employed . . .. Complainant was the only driver canceled after an accident during the period relevant hereto. . . .

"14. Respondent's instruction to Beverage to relieve Complainant of all driving duties coerced and compelled Beverage to discharge Complainant."

In Finding of Fact No. 12, the Commission determined Markel's decision to exclude Renoll was made with knowledge of her sex. Transit argues, to the contrary, that Markel's decision was made on June 10, 1970, and, at that time, Markel believed Renoll was a male driver under twenty-five years of age. The record supports the Commission's finding.

In a letter dated June 1, 1970, Markel was informed Renoll was twenty-three years old. On June 10, 1970, Markel ordered *"Mr."* Renoll to be removed as a driver "unless the insured has some redeeming features to offer on this individual . . . " [Emphasis added.] On June 12, 1970, information regarding Renoll's high qualifications and performance as a driver, as well as a correction of her sex identity, was transmitted to Markel. On July 2, 1970, Beverage was advised Renoll had been removed from coverage and should be relieved of all driving duties.

This correspondence provides substantial evidence from which the Commission could find the June 10 decision was not final and was, in fact, contingent upon receipt of more information. Thus, the Commission's conclusion that Markel's decision to exclude Renoll was made with knowledge of her sex is supported by substantial evidence.

Finding of Fact No. 13 refers to Transit's asserted policy of excluding the high-risk-under-twenty-five year old driver from coverage. Transit contends its decision to exclude

Renoll from coverage was based upon this policy rather than upon her sex identity.

Transit's witness, Arthur S. Wilson, testified the underwriting policy of Markel was to relieve from driving duties any driver of any of its insured who was involved in an accident and was under twenty-five years of age. This testimony was reinforced by Transit's letter of September 20, 1970, which reiterated the high-risk-under-twenty-five policy and added that the cause of the accident and the degree of the insured driver's responsibility were factors to be considered in applying the policy.

The Commission rejected this explanation for cancellation of Renoll's coverage. In doing so, the Commission relied on the testimony of one of its own investigators that the insurance coverage of four under-twenty-five male drivers for Beverage had not been canceled, even though each had also been involved in accidents. While two of these accidents may not have come to Markel's attention because they were covered by Beverage's collision policy with another insurance company, Markel offered no acceptable explanation for its failure to exclude the other two under-twenty-five male drivers.

Accordingly, the Commission's Finding No. 13 is supported by substantial evidence in the record: Markel did not adhere to its alleged underwriting policy because the decision to exclude Renoll from coverage was based not upon such a policy but upon her sex identity. Thus, the Commission's Finding No. 14, that Transit coerced and compelled Beverage to discharge Renoll, was reasonable and must be sustained.

## II

We now turn to the central issue in this case. Having determined Transit violated Section 5(e) of the Act, 43 P.S. § 955(e), the Commission ordered Transit to cease and desist its unlawful discriminatory practice and to pay Renoll her lost earnings for the period spanning July 10, 1970, the date of discharge, to February 18, 1972, the date on which the

insurance policy between Transit and Beverage expired.[2] Transit asserts the Commission's award was not in accordance with law because the Commission has no authority to order anyone other than an employer of the complainant to pay lost earnings to that complainant.

The Commission's authority to grant relief upon a finding of unlawful employment discrimination is contained in Section 9 of the Act, 43 P.S. § 959 which provides in part:

"If upon all the evidence at the hearing, the Commission shall find that a *respondent* has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its finding of fact, and shall issue . . . an order requiring such *respondent* to cease and desist from such unlawful discriminatory practice and *to take such affirmative action including but not limited to hiring, reinstatement or upgrading of employes, with or without back pay . . . as, in the judgment of the Commission, will effectuate the purposes of this act . . . .*" [Emphasis added.]

█ Section 9 makes it clear the Commission is not limited to ordering only the types of relief specified therein. The Legislature has incorporated in Section 9 a rule of construction which requires that a statute be read in a manner which will effectuate its purposes. The Legislature has specifically given the Commission authority "to take such affirmative action . . . as, in the judgment of the Commission, will effectuate the purposes of this act."

One of the policies of the Act is "to foster the employment of all individuals in accordance with their fullest capacities regardless of their . . . sex . . . and to safeguard their right to obtain and hold employment without . . . discrimination . . . ." Section 2(b) of the Act, 43 P.S. § 952(b).

Moreover, in Section 12(a), 43 P.S. § 962(a), the Legislature has directed that the provisions of the Act are to be construed liberally in order to accomplish the stated pur-

2. Renoll was rehired by Beverage in March, 1972.

poses. We have repeatedly upheld the principle of the Act's liberal construction in defining the Commission's remedial powers.

> "The words 'as in the judgment of the Commission' indicate to us that the Legislature recognized that only an administrative agency with broad remedial powers, exercising particular expertise, could cope effectively with the pervasive problem of unlawful discrimination. Accordingly, the Legislature vested in the Commission, quite properly, maximum flexibility to remedy and hopefully eradicate the 'evils' of discrimination."

*Pennsylvania Human Relations Commission v. Alto-Reste Cemetery Association,* 453 Pa. 124, 133–34, 306 A.2d 881, 887 (1973). See also *Pennsylvania Human Relations Commission v. Chester Housing Authority,* 458 Pa. 67, 327 A.2d 335 (1974); *Pennsylvania Human Relations Commission v. Chester School District,* 427 Pa. 157, 233 A.2d 290 (1967).

■ There is, however, a correlative that a statute be read so as to effectuate its purpose—viz., that an administrative agency can only exercise those powers which have been conferred upon it by the Legislature in clear and unmistakable language. But, we conclude the power to order payment of lost earnings by a person or entity other than an employer has been conferred on the Commission by the Legislature.

First, the award of lost earnings amounted to an award of "back pay" which is expressly authorized by Section 9. 43 P.S. § 959; *Pennsylvania Human Relations Commission v. Freeport Area School District,* 467 Pa. 522, 359 A.2d 724 (1976). Second, Section 5(e) of the Act, 43 P.S. § 955(e), clearly expresses the Legislature's intent that *"any person, whether or not an employer"* can be held responsible for an unlawful discriminatory employment practice. [Emphasis added.] Third, Section 9 of the Act, 43 P.S. § 959, authorizes the Commission to order affirmative action by a "respondent," not merely by an employer.

Transit argues a non-employer should not be required to pay back salary since the statute literally read permits the

Commission to order a respondent to hire, reinstate, or upgrade an *employee* with back pay. Transit contends that, since Renoll is not its employee, it cannot hire, reinstate or upgrade Renoll, and thus is not subject to a back-pay award.

The Commonwealth Court, in affirming the Commission's order, rejected Transit's argument. We concur.

"To relieve this respondent of paying lost earnings merely because it cannot reinstate or upgrade the complainant, as an employer could, would be to distort beyond reason the purpose of the Act. It could be argued also that the respondent actually *is* in a position to 'upgrade' the complainant as an employee of Beverage by ceasing its unlawful discrimination, for the notion of 'upgrade' most certainly refers to terms, conditions, and privileges of employment, and a condition of employment as a truck driver here was effective insurance coverage and the absence of such coverage is attributable to the respondent. Having been ordered to cease these discriminatory practices, the respondent, although not an employer, was ordered in effect to upgrade the complainant's employment status to the equivalent status of the male employees." [Emphasis in original.]

*Commonwealth, Pennsylvania Human Relations Commission v. Transit Casualty Insurance Company,* 20 Pa.Cmwlth. 43, 53, 340 A.2d 624, 629 (1975).

■■ The purpose of Section 9, 43 P.S. § 959, is to make the party responsible for the discrimination also responsible for compensating the injured party. Under Section 5(e), 43 P.S. § 955(e), a non-employer may be responsible for a discriminatory employment practice. Thus, we must conclude the statute authorizes the Commission to order a respondent, whether or not an employer of the complainant, to compensate that complainant through the payment of back pay where the respondent is responsible for the loss through an unlawful discriminatory practice.

Order affirmed.