# Lower Saucon Township v. Election .Board of Northampton County

*George A. Hahalis,* for Lower Saucon Township.

*Malcolm J. Gross,* for Elwell & Call-Chronicle.

*John D. DiGiacomo,* for defendants.

WILLIAMS, P.J., April 5, 1983—These three actions have been consolidated for decision. The facts which appear in the record and by stipulation of all counsel indicate the following:

Plaintiff, Lower Saucon Township (township), petitioned defendant, Election Board of Northampton County (board), to have placed on the 1983 primary election ballot a non-binding referendum question regarding the proposed alignment of Interstate Route 78 through the township. The Pennsylvania Department of Transportation proposes to construct several miles of interstate highway through the township. The township council adopted a resolution requesting the board to place the following question on the ballot:

Do you favor the upgrading of U.S. 22 as the Interstate 78 alignment instead of the construction of the Interstate on a southern corridor alignment through Lower Saucon Township?

The board conducted a public hearing on February 24, 1983. Plaintiff, Gay Elwell (Elwell), a reporter for plaintiff, Call-Chronicle Newspapers, Inc. (Call-Chronicle), a local newspaper, was among those in attendance.

During the meeting, the township presented testimony concerning the alleged adverse impact which the proposed construction would have upon the community. At the conclusion of the testimony, the board announced that it would caucus to discuss the matter.[1] While in caucus, which was attended only by the board and the Assistant County Solicitor, the board discussed the merits of the proposed referendum and took a vote upon the question. The vote resulted in three members opposed to placing the referendum on the ballot, one in favor and one abstention. The board then returned to the hearing room and announced its decision. After the township's attorney and Elwell challenged the vote as being violative of the Open Meeting Law,[2] the Solicitor announced that the board would vote in public. This vote was identical to one taken in caucus. The members of the board then answered questions from the public concerning their action.

The township contends that the board, in recessing to caucus and voting upon the matter in private, violated the Open Meeting Law and requests this court to declare the vote invalid. Due to time limitations and because a remand to the board

1. At this point, the transcript ends. The events which followed have been stipulated by counsel.

2. Act of July 19, 1974, P.L. 486, 65 P.S. §261 et seq., colloquially known as the Sunshine Law.

would undoubtedly lead to the same result, the township by a separate action in equity asks the court to find that the board's failure to place the question on the ballot constituted an abuse of discretion and requests an order placing the question on the ballot. Plaintiffs Elwell and Call-Chronicle likewise assert that the board's actions violated the Sunshine Law, but request quite a different remedy. To insure "a fair and unbiased" decision on the matter, they insist that we should remove the members of the board and provide for the appointment of new members.

## I. JURISDICTION

### A. Lower Saucon Township

The township's appeal is pursuant to Section 752 of the Local Agency Law,[3] which provides:

Any person aggrieved by an adjudication by a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).[4]

There can be little doubt that the board here is a local agency within the meaning of the statute and the county solicitor so concedes. Defendant contends, however, that the township lacks standing to bring this appeal under Section 752. This contention is without merit.

In order to have standing to appeal from the actions of an agency, plaintiff must fall within the lan-

---

3. 2 Pa. C.S. §§551-55, 751-54, Act of April 28, 1978, P.L. 202, effective June 27, 1978.

4. Pursuant to 42 Pa. C.S.A. §933(a)(2), this court is empowered to review such appeals.

guage of sec. 752. The township is a "person aggrieved" within the meaning of the statute.' First, sec. 101 specifically includes a "government unit" within the definition of "person". Second, the citizens have a direct financial interest in the construction of Interstate 78. Testimony presented at the hearing revealed that the erection of the highway would result in a 7 percent decrease in the township's tax base. Consequently, the burden of recouping the lost revenue will fall on the local taxpayers. Such a direct financial interest has been held to be sufficient under this section. See Action Alliance of Senior Citizens of Greater Philadelphia v. Philadelphia Gas Commission, 6 D. & C. 3d 144 (1977).

In addition, it is clear that the refusal of the board to place the referendum on the ballot was an "adjudication" within the meaning of Section 752. For the purpose of entertaining the township's petition, the board duly advertised a hearing date,[5] entertained testimony, recorded and transcribed the proceedings, voted, and explained the reasons for their decided course of action. Under these circumstances we hold that the decision not to place the referendum on the ballot constituted an adjudication within the meaning of sec. 752.[6] Consequently, the township is properly before us. Since the local Agency Law provides an adequate remedy at law, we dismiss the township's petition and complaint in equity.

---

5. 65 P.S. §265.

6. Indeed, the courts of this Commonwealth have found an "adjudication" under circumstances involving far less formal agency action. See, e.g., Robeson v. Philadelphia Tax Review Board, 13 Pa. Commw. Ct. 513, 319 A.2d 201 (1974); Home Builders Association of Metropolitan Pittsburgh v. Allegheny County Plumbing Board, 50 D. & C. 2d 275 (1970).

B. Gay Elwell And Call-Chronicle Newpapers

Since these plaintiffs were not a party to the proceedings before the board, sec. 752, which relates only to appeals, is inapplicable. We must therefore determine whether they are properly before us sitting as a court of original jurisdiction. We conclude that they are.

Section 269 of the Sunshine Law provides:

. . . The action may be brought by any person in the judicial district where such person resides or has his principal place of business, where the agency whose act is complained of is located or where the act complained of occurred.

Although it seems apparent that plaintiffs fall within the express language of Section 269, defendant argues that their failure to demonstrate prejudice as a result of the board's decision precludes this Court from entertaining their action. We decline to legislate such a requirement into an otherwise clear provision of the statute.

It is a fundamental tenet of statutory interpretation that an act be construed in a manner which will effectuate the intent of the legislature. Commonwealth Human Relations Commission v. Transit Casualty Insurance Co., 478 Pa. 430, 387 A.2d 58 (1978); 1 Pa. C.S.A. §1921(c). Here, the clear object of the Sunshine Law, which was enacted in 1974 amid widespread public dismay over Watergate, was to open the decision-making processes of the government to greater public scrutiny and accountability. See Consumer Education and Protective Association v. Nolan, 470 Pa. 372, 368 A.2d 675 (1977). This laudable legislative goal, combined with the broad language of sec. 269, compels us to conclude that plaintiffs, despite their fail-

ure to demonstrate prejudice, have standing to bring the instant action.[7]

Accordingly, we hold that each plaintiff has standing and the consolidated actions are properly before us for disposition.

## II. SCOPE OF REVIEW[8]

As an appellate court examining the decision of the board not to place the question on the ballot, our standard of review is set forth in the Local Agency Law as follows:

In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa. C.S. §706 (relating to disposition of appeals).

7. Had the legislature wished to require a more restrictive standard for those desirous of challenging alleged violations of the Sunshine Law, it could have done so by requiring that plaintiff be a "person aggrieved" or have a "direct interest" as they had done in 2 Pa. C.S.A. §752.

8. Because the township was the only party below, this portion of the opinion has no applicability to plaintiffs Elwell and Call-Chronicle.

2 Pa. C.S.A. §754(b).[9] It is not the function of this court to substitute its judgment for that of the board's. Indeed, we express no opinion as to the wisdom of placing this referendum on the ballot; we are bound to uphold the decision of the board unless it is in violation of the law.

## III. THE SUNSHINE LAW

Section 262 of the Sunshine Law provides:

The meetings or hearings of every agency at which formal action[10] is scheduled or taken are public meetings and shall be open to the public at all times. No formal action shall be valid unless such formal action is taken during a public meeting.

In addition, the law prohibits an agency from interrupting public meetings for private sessions. Section 263 states:

No public meeting of any agency shall be adjourned, begun, recessed or interrupted in any way for the purpose of an executive session except as hereinafter provided.[11]

---

9. It should be noted that the record of the proceedings ends with the Board retiring to caucus. Although this would otherwise render the record incomplete and our review under §754(b) improper, McAllister v. Civil Service Commission of City of Philadelphia, 64 Pa. Commw. 48, 438 A.2d 1043 (1982), we believe the stipulations of fact made by counsel at the hearing before us sufficiently supplement the record for our review. The reason for requiring a complete record is so a reviewing court has a sufficient record before it upon which to rule on the questions presented. Sharp v. Department of Public Welfare, 7 Pa. Commw. 623, 300 A.2d 909 (1973). That requirement has been met.

10. "Formal action" is defined as "the taking of any vote on any resolution, rule, order, motion, regulation or ordinance or the setting of any official policy". 65 P.S. §261.

11. An executive session, not exceeding 30 minutes, may be held only when it deals with labor negotiations or the censure of public officials. Obviously, neither exception is applicable here.

Here, the stipulated facts indicate that the Board went into caucus to discuss the issue. Thus they held a private executive session which, being for neither of the two permissible purposes, constituted a violation of sec. 263. Moreover, during this improper executive session, the board voted upon the subject matter of the public meeting. These actions by the Board constituted a violation of the Sunshine Law and are, pursuant to sec. 262, invalid.

Defendant strongly contends, relying on Judge v. Pocius, 28 Pa. Commw. 139, 367 A.2d 788 (1975), that no violation of the Sunshine Law occurred since the vote which constituted the "formal action" was re-taken during the public meeting. Defendant argues that, under Judge, it is the act of voting which must occur in public and since the second vote was during a public meeting, no violation occurred. In Judge, the court held that the preliminary activities of deliberation, discussion and decision leading up to affirmative formal action are not subject to the Sunshine Law and therefore need not be public. The case at bar, however, is clearly distinguishable. The activities in Judge which plaintiff asserted as violating the Sunshine Law were conducted during an informal, private meeting of a school board at which formal action was neither scheduled nor taken. Moreover, no public meeting was scheduled or held. Here, the board interrupted a public meeting, conducted a vote in private and, after plaintiffs contested their actions as being violative of the Sunshine Law, re-voted in public in an attempt to formalize what had already been decided during the unlawful executive session.

Under these circumstances, we conclude that the Board violated the Sunshine Law.

## IV. THE REMEDY

Finding a violation of the Sunshine Law, we would ordinarily remand the matter to the Election Board for further proceedings in accordance with the law.[12] This, however, as plaintiffs accurately point out, would be inappropriate since the board has already demonstrated its unwillingness to place the referendum on the ballot and a remand at this late date, considering the time constraints for the election, would effectively preclude further appellate review. The township therefore urges us to reverse the Election Board and to order them to place the referendum on the 1983 primary election ballot.

On the other hand, plaintiffs Elwell and Call-Chronicle request us to order the removal of the board members from their office to permit a new board to hear the matter de novo. Not only is this contention completely without foundation in law, but it is also repugnant to our sense of fairness and justice. Indeed, to do so would undoubtedly constitute a violation of the time-honored doctrine of separation of powers. The legal rationale advanced in favor of this remedy does not even merit discussion and the requested relief is summarily denied.

The precise question to which we address ourselves then is whether this court has the authority to compel the election board to place a non-binding referendum on the ballot. We think not.

---

12. We note that the Sunshine Law, §268, prescribes its own remedy, a fine of up to $100, for any member of an agency who acts with the "intent and purpose" of violating the act. However, the record is barren of any suggestion that the members of the board acted with the intent and purpose of violating the Act. In addition, no party has requested us to impose the sanction of §268. We therefore address ourselves to the requested remedies.

396

The township contends that this court has such authority and directs our attention to two cases decided by our sister Common Pleas Court in Lehigh County: Trexler Lake Project Referendum, 4 D.&C. 3d 99 (1977), and Allentown School District Referendum, 13 D.&C. 3d 741 (1980).

In Trexler, the Lehigh County Board of Elections placed a non-binding referendum on the ballot. Plaintiffs brought an action requesting its removal. The court held that although there exists neither statutory authorization nor prohibition regarding the placement of non-binding referenda on election ballots, the failure of the legislature to specifically provide for such referenda did not preclude the board from placing the advisory question on the ballot. Recognizing that the question presented a matter of significant local impact upon which the public should be permitted to express an opinion, the court declined to order the removal of the referendum from the ballot.

In Allentown School District, the election board agreed to place a non-binding referendum on the ballot. The school board opposed this referendum and sought to enjoin its inclusion on the ballot. Recognizing once again the absence of statutory authorization or prohibition for the placement of non-binding referenda on the ballot, the court, in this instance, granted the requested relief. Fearing that permitting the inclusion of such referenda would "open a floodgate of advisory questions on every issue of public moment", Id. at 744 quoting Trexler Lake Project Referendum, supra (Backenstoe, J., concurring), the court limited its sanctioning of non-binding referenda, as in Trexler, to issues of significant local impact. On this basis, the court held that the question was not an appropriate one to submit to the voters.

The distinction between these Lehigh County cases and the one at bar is palpable. In both Trexler and Allentown School District, the petitioners sought the removal of the referendum from the ballot; here, however, plaintiff requests us to compel the board to act affirmatively and place the non-binding referendum on the ballot. This distinction is significant.

The court in Allentown School District was unequivocal in holding that only where the referendum concerned an issue of significant local impact would it defer to the board and sanction the placement of a non-binding referendum on the ballot. In no way, however, did the court intimate that it would similarly compel the board to place a referendum on the ballot even if it were an issue of significant local impact.

Were this court to commence a policy of ordering such questions placed on the ballot each time a municipality by resolution or a public interest group by petition claimed that an issue was one of significant local impact, such a precedent would unquestionably open the floodgates over which the learned court in Lehigh County expressed concern. We therefore decline to extend the holdings of Trexler and Allentown School District to create a new rule of law for this case.[13]

The present case is more akin to Lansdale v. Election Board of Montgomery County, 7 D.&C.3d 220 (1978). Although plaintiff in Lansdale brought its action in mandamus, the court's reasoning and analysis are relevant in this case. There plaintiff

---

13. In an opinion filed March 30, 1983, a court en banc of Lehigh County in a well-reasoned opinion reached the same result as we do upon an identical question. See Upper Saucon Twp., et al. v. Election Board of Lehigh County, No. 83-C-279.

sought to compel the board to place a non-binding referendum on the ballot. The court, noting the absence of relevant statutory and case law which would authorize the granting of the requested relief, declined to do so.

The example set by the court in Lansdale is one of judicial restraint and one to which we adhere. An examination of the Election Code[14] reveals legislative silence on the subject of non-binding referenda. In addition, our research has revealed no appellate case law directly on point. We hold, therefore, that in the absence of specific authority empowering this court to compel the placement of non-binding referenda on an election ballot, the Election Board's decision should not be disturbed.

## ORDER OF COURT

And now, April 5, 1983, for the reasons set forth in the foregoing opinion, the decision of the Election Board of Northampton County not to place a non-binding referendum question concerning the alignment of Interstate 78 in Lower Saucon Township on the 1983 primary election ballot, although arrived at in violation of the Open Meeting Law, is affirmed. Plaintiffs' petitions and complaints are dismissed.

---

14. Act of June 3, 1937, P.L. 1333, 25 P.S. §2601 et seq.