622 A.2d 412

**STATE EMPLOYES' RETIREMENT BOARD, Petitioner,**

**v.**

**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1992.

Decided March 5, 1993.

56

Nicholas Joseph Marcucci, Deputy Chief Counsel, for petitioner.

Michael Hardiman, Asst. Chief Counsel, for respondent.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The State Employes' Retirement Board (SERB) appeals from an order of the Pennsylvania Human Relations Commission (Commission) which directed The State Employes' Retirement System (SERS), *inter alia,* to cease and desist discriminating against applicants because of their age with respect to eligibility for disability annuities.

In June 1978, Flora M. Osman became an employee of the Commission and on May 10, 1985 she reached her sixtieth birthday. On or about October 9, 1985, Osman contacted SERS to determine her eligibility for a disability annuity. She was advised by the Director of the Retirement Counseling Division that she was not eligible to receive a disability annuity because she had reached superannuation age.[1,2]

On or about November 25, 1985, Osman filed a notarized complaint with the Commission against SERS alleging that SERS's "disability retirement guidelines have a discriminatory effect on all persons who become disabled on or after their sixtieth birthday."[3] In November 1986, the Commission notified SERS that probable cause existed to credit Osman's allegations that she was discriminated against because of her age in violation of the Pennsylvania Human Relations Act, Act

---

1. Superannuation age is defined in Section 5102 of the State Employees' Retirement Code (Retirement Code), 71 Pa.C.S. § 5102, as:

    Any age upon accrual of 35 eligibility points or age 60, except for a member of the General Assembly, an enforcement officer, a correction officer, a psychiatric security aide, a Delaware River Port Authority policeman or an officer of the Pennsylvania State Police, age 50.

2. No formal application was filed with SERB, but no question is raised because of this failure and both parties agree that complainant was prohibited by statute from obtaining a disability pension. We therefore attach no significance to the omission of a formal application. *But see Dingle v. State Employes' Retirement System,* 62 Pa. Commonwealth Ct. 79, 435 A.2d 664 (1981).

3. Flora Osman terminated her employment with the Commission effective March 4, 1986. She retired effective March 5, 1986 and was eligible to receive a superannuation annuity. She died on June 9, 1986. Her daughter, Sharon Lawson, filed an amended complaint on behalf of the estate of Flora Osman.

of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–962.2 (Human Relations Act).

On October 23, 1990, the Commission held a hearing on Osman's complaint and, on April 3, 1992, the Commission issued its order. The order required SERS to take the following actions:

1. That [SERS] cease and desist from discriminating against Complainant and all others similarly situated because of their age with respect to eligibility to apply [for] disability annuities and/or with respect to the formula used to calculate the amount of any such annuity awarded.

2. That [SERS] cease and desist from administering that section of the Retirement Code that prohibits employees from becoming eligible for a disability annuity, solely because of age where the disability occurs after attainment of superannuation age.

3. That [SERS] permit employees who have reached superannuation age to apply for and receive annuity under the same criteria as is currently utilized for employees who are under superannuation age.

4. That [SERS] contact Complainant's estate through the administrator and provide the opportunity to apply for a disability annuity on behalf of the Complainant, as of October 16, 1985.

5. That [SERS] treat Complainant's application in the same manner it would have been treated, if actually filed on October 16, 1985.

6. That [SERS] cease & desist from applying that section of the Retirement Code which contains an age-biased disability formula and that [SERS] use the disability formula which will result in employees otherwise eligible who are hired after they become 43.333 years old with a disability annuity equal to not less than one-third of final average salary in the same manner as is received by those employees who are otherwise eligible who were hired before they became 43.333 years old.

The importance of this case is apparent. It involves the interaction between two influential agencies of the state gov-

ernment. An integral part of the case concerns crucial questions of interpretation of legislative intent, for, stripped of all the details, the Commission has held two provisions of the Retirement Code enacted by the General Assembly invalid as discriminatory.

We thus commence our analysis by determining whether the Commission was given the power to declare a state statute invalid as discriminatory.[4]

First, it is undisputed that authority for the differential treatment complained of is found in Section 5308 of the Retirement Code, 71 Pa.C.S. § 5308, and that SERB was bound to follow its dictates. Thus, SERB was not exercising its discretion but was following the statute.

On the other hand, the statute on which the Commission based its decision to order SERS to cease implementing sections 5308 and 5704 of the Retirement Code is section five of the Human Relations Act, 43 P.S. § 955.

It shall be an unlawful discriminatory practice....

(a) For any employer because of the ... age ... of any individual ... to ... discriminate against such individual ... with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual ... is the best able and most competent to perform the services required. The provision of this paragraph shall not apply, to (1) termination of employment because of the terms or conditions of any bona fide retirement or pension

---

**4.** In *Public Employees v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), the Supreme Court of the United States upheld a provision which was the same as the disability annuity provision in this case. However, in that case, a complaint was brought in federal district court and the court of appeals had held that the provision was discriminatory under the Age Discrimination in Employment Act of 1967, 29 USC 621 et seq. However, that case did not decide the question of an agency's power to hold a statute invalid as discriminatory.

The case before us could easily be decided if we were compelled to decide it on the basis of the authority of *Betts* but, in construing the Human Relations Act, we are not bound by federal interpretation of the Civil Rights Act. *Harrisburg School District v. Pennsylvania Human Relations Commission*, 77 Pa. Commonwealth Ct. 594, 466 A.2d 760 (1983).

plan, (2) operation of the terms or conditions of any bona fide retirement or pension plan which have the effect of a minimum service requirement.

In a determination of the scope of the Commission's power and authority, we are not without guidance. In *Pennsylvania Human Relations Commission v. St. Joe Minerals*, 476 Pa. 302, 310, 382 A.2d 731, 735–736 (1978), our Supreme Court said:

> In delimiting the scope of an administrative agency's power, we do not write on a blank slate, and the controlling principles are firmly established:
>
>> 'the principle guiding to decision is this: The power and authority to be exercised by administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined.'
>
> .     .     .     .     .
>
> The legislature did not include the power now sought to be confirmed in the Commission. Whether or not this omission was wise is of no moment to this Court. Our function is to interpret the statute according to what the Legislature said, not according to what it should have said or might have said.

The Supreme Court then upheld this Court's decision to *refuse to give this same Commission the relatively innocuous power to compel answers to interrogatories*, simply because that power was not granted in the statute.

In the present case, the Commission is certainly seeking a far greater power than the authority to compel answers to interrogatories when it asks us to hold it has the power to declare a statute governing a sister agency invalid as discriminatory. We will not stretch the statute granting the Commission its powers that far.

In this conclusion we are supported by section 7(k) of the Human Relations Act, 43 P.S. § 957(k), which requires the Commission to submit an annual report and directs that the

Commission "shall also contain recommendations for such further legislation concerning abuses and discrimination because of ... age...." This provision authorizes the commission to report to the General Assembly its recommendations for legislation. It certainly does not authorize the Commission to invalidate enacted statutes, and nowhere else in the Act's enumeration of powers and duties do we find such an authorization. *See St. Joe Minerals.*

■ Thus, we conclude that the Commission does not have the power to declare portions of the Retirement Code invalid, but does have the power to make those recommendations to the legislature that it deems advisable.

The Commission makes one further effort to argue that the legislature intended, by the inclusion of one general phrase in its enabling act, either to repeal those other acts of the legislature which it contends were discriminatory or to empower the Commission to declare certain statutes invalid because they are discriminatory. The Commission relies for this argument on Section 12(a), 43 P.S. § 962(a):

The provisions of this act shall be construed liberally for the accomplishment of the purposes thereof, and any law inconsistent with any provisions hereof shall not apply.

In view of the specificity of the provisions preventing SERS from granting disability pensions after a person reaches the age of superannuation,[5] we cannot attribute to the general provision quoted above the broad effect that the Commission espouses, which is to negate *this* legislative enactment that the Commission deems to be inconsistent with the Human Relations Act. Nor can we extend the powers of the Commission under the guise of favoring the public interest. Again, we quote *St. Joe Minerals,* in which our Supreme Court said:

We are not unmindful of the legislative mandate to broadly construe the provisions of the Human Relations Act to effectuate its purpose, that purpose being to assure equal

---

5. The Retirement Code contains the following provision, 71 Pa.C.S. § 5955, in opposition to this general statement of inconsistency:
   Pension rights of State employees shall be determined solely by this part or any amendment thereto....

opportunity to every individual regardless of race, age, sex, or national origin. 43 P.S. § 952(b) (Supp.1977–78). We may not, however, under the pretext of effectuating that intent, or of favoring the public interest over the private interest (see 1 Pa. C.S.A. § 1922(5) (Supp.1977–78)), ignore the letter of the statute or well settled principles concerning the scope of an agency's power.

*Id.*, 476 Pa. at 312, 382 A.2d at 736.

In addition, we are not satisfied that the Commission has provided a satisfactory explanation to SERB's admittedly uncomplicated argument of statutory construction, to wit, that section 12(a) of the Human Relations Act first appeared in 1955, that section 5308 of the Retirement Code was enacted or re-enacted in 1974, and, thus, where two statutes are in conflict, the statute later in date must prevail. Section 1936 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1936.

Even so, with commendable thoroughness, the Commission, in the opinion accompanying the recommendation of its hearing panel, has provided the following analysis in answer to the above argument.

However, as PHRC Regional Counsel for the Commission notes, we must look further at the history of the statutes in question. The most important point here is that even though the 1974 Retirement Code was finalized, these provisions were not new enactments but rather a continuation of existing law. Furthermore when the State Employes' Retirement Code was created in 1923, those employees who had superannuation age (60) were no longer eligible to receive a disability annuity. Therefore, the 1974 Retirement Code was not a new enactment by the Legislature, as it relates to disability annuities.

Lastly, the Pennsylvania Human Relations Act has been subject to review by the General Assembly since 1974. This review not only evaluated and enacted legislation but also amended several provisions to the Pennsylvania Human Relations Act. Act of December 16, 1986 P.L. 1626, No. 186, 43 P.S. § 1951 et seq. The Legislature retained the provision stating that inconsistent laws did not apply.

Clearly, the Legislature could have fashioned an exception that would have exempted the disability structure set forth in the Code. The Legislature did not do so.

In conclusion we are left with the fact that the Legislature (General Assembly) has clearly established that where an inconsistent law exists, the Pennsylvania Human Relations Act shall apply.

(Commission opinion, p. 23).

However, this argument ignores the chronology of enactment of the statutes and, instead, relies upon what the legislature did *not* do, even though it acted subsequent to 1974 on other provisions in the Human Relations Act. We cannot and do not accept this analysis as a rebuttal to the dictates of 1 Pa.C.S. § 1936.

Furthermore, we cannot agree with the Commission's conclusion because Section 1933 of the Statutory Construction Act, 1 Pa.C.S. § 1933, also provides:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

██ We are convinced that the legislature did not intend to make the specific section of the Retirement Code on disability pension eligibility yield to the general inconsistent provision of the Human Relations Act.[6] We find nothing in that Act to

6. SERB also makes the argument that, since it is not Osman's employer, the Commission has no jurisdiction. (Osman was an employee of the Commission). However, we reject this contention on the authority of *Human Relations Commission v. Transit Casualty Insurance Company*, 478 Pa. 430, 439, 387 A.2d 58, 63 (1978), in which our Supreme Court held that an insurance company who was not the employer of a complainant could be held responsible when it cancelled insurance coverage on employers' trucks for an employee driver because the company learned she was a female, the Court said:

indicate that it was the General Assembly's intent to empower the Commission, by virtue of section 12(a), to invalidate statutes.

■ In *Department of Labor and Industry, Office of Vocational Rehabilitation v. Pennsylvania Human Relations Commission*, 118 Pa. Commonwealth Ct. 163, 545 A.2d 412 (1988), having decided that the Commission did not have jurisdiction over a complainant's complaint, we transferred the matter to the agency that was the appropriate forum in which to challenge the decision adverse to that complainant. Ordinarily, we would provide the same relief here. However, in the interest of judicial economy[7] and, since much of the foregoing discussion has required an interpretation of legislative intent, we are bound to address the question of the proper forum to seek a remedy for the type of discriminatory action here alleged. Our discussion requires that we make some fine but fundamental distinctions regarding discrimination in general and in relation to the alleged discrimination in this case.

Certain types of discrimination have been declared to be unconstitutional both under the Federal Constitution and our Commonwealth Constitution in Article I, section 26.[8] No

The purpose of Section 9, 43 P.S. § 959, is to make the party responsible for the discrimination also responsible for compensating the injured party. Under Section 5(e), 43 P.S. § 955(e), a non-employer may be responsible for a discriminatory employment practice. Thus, we must conclude the statute authorizes the Commission to order a respondent, whether or not an employer of the complainant, to compensate that complainant through the payment of back pay where the respondent is responsible for the loss through an unlawful discriminatory practice.
478 Pa. at 439, 387 A.2d at 63.

7. In light of the parties' stipulation that SERB would have denied Osman's application had one been filed, and SERB's position that it is bound to follow the Retirement Code's provision prohibiting disability pensions for persons in Osman's position, it would serve no purpose but delay to transfer this matter to SERB, only to have Osman's request denied. We note with dismay that, although Osman filed her complaint in 1985, a hearing on it was not held until 1990 and the Commission's order not entered until April 3, 1992.

8. It is interesting to note that, in 1972, Judge Kramer, in a concurring opinion, urged that age, together with gender, be listed with race, creed, color and religion as a suspect criterion, requiring a heavy

question was raised as to whether the discrimination alleged here was unconstitutional and we therefore make no determination of this question.

In addition, however, under the Human Relations Act, discrimination in connection with employment and the conditions of employment has been declared unlawful by the legislature, and the initial determination of whether such discrimination exists has been delegated by that legislature to the Commission. Nonetheless, we repeat that our analysis has led us to conclude that the power to determine that the specific discrimination alleged—the enactment of certain Retirement Code provisions disqualifying persons over 60 years from disability pensions under certain circumstances—is unlawful has not been so delegated to the Commission. We reach this conclusion because the very legislature which granted the Commission its powers has enacted the specific statutory provisions that are alleged to be invalid.

It follows logically that our conclusion as to legislative intent is binding on this Court just as it is on the Commission and that we equally have no right to declare, on non-constitutional grounds, that a later-enacted statute will fail as discriminatory when we have concluded it is the legislature's intent to effectuate the disparate treatment alleged to be discriminatory. Rather, the remedy for the possible inequity and discrimination must be addressed to the legislature. We are not without analogous authority in reaching this conclusion.

In a case involving the interaction between Act 111 and the Retirement Code, this Court eventually reached the same conclusion that we have determined in this instance—viz., that the remedy must be with the legislature and not the judiciary.

In *Pennsylvania State Troopers Association v. Commonwealth*, 145 Pa. Commonwealth Ct. 291, 298, 603 A.2d 253, 256 (1992), this Court traced the history of litigation regarding two statutes and concluded:

> burden of justification under federal and state constitutional law, when age forms the basis for justifying legislation that effects disparate treatment. *McIlvaine v. Pennsylvania State Police*, 6 Pa. Commonwealth Ct. 505, 296 A.2d 630 (1972).

Having determined that Act 111 is not constitutionally protected against amendment or repeal, we can now rely on the general principles of statutory construction to construe the effect of Section 5955 on Act 111, which are clearly in conflict. Act 111 allowed arbitration awards affecting pension benefits. Section 5955 prohibits such awards. Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail. 1 Pa.C.S. § 1936. Because Section 5955 of the Retirement Code was enacted in 1991, it necessarily prevails over any inconsistent provision of Act 111, which was enacted in 1968.

Because the General Assembly is not constitutionally prohibited from amending Act 111, the Association's argument that the Commonwealth is attempting to hide behind a self-imposed legal restriction must also fail. The cases cited by the Association all involve municipalities, which necessarily have only those powers expressly granted by the legislature. Washington Arbitration Case, 436 Pa. 168, 259 A.2d 437 (1969). Those powers were limited by the passage of Act 111. Our discussion here demonstrates that no such limitation on the powers of the General Assembly exists. What the legislature has given, it has now taken away. That the Association is displeased with this action is understandable. The remedy, however, must lie with the legislature and not the judiciary.

We recognize that in *Pennsylvania State Troopers Association* the Court disposed of a constitutional question and that none is raised here, but, otherwise, the case is analogous since, once the Court had determined the legislative intent, it was bound to refer the parties to the legislature for a remedy.

We also point out that the legislature has available to it the actuarial studies of pensions, the ability and facilities to determine the effect of any changes in the Retirement Code and the mandate to weigh the advisability of effecting such changes, as well as the inherent power to decide how best to remedy the problem and fashion appropriate remedial legisla-

tion if it deems that doing so is the collective will of its constituents.[9]

We therefore reverse the decision of the Commission and vacate its order.

## ORDER

AND NOW, this 5th day of March 1993, the order of the Human Relations Commission at No. E–35205A, dated April 3, 1992, is hereby reversed.

9. For some of the arguments that might be set forth on both sides, we again refer to the opinion in *Betts* where the same alleged discriminatory situation (no disability pensions after the superannuation age) occurred. There, the majority opined in general terms that the allowance of such differential treatment would encourage employees to hire older workers because they would not have to take them into their pension plans on the same terms as those of younger workers. On the other hand, the *Betts* minority points out that providing disability pensions for older persons will be less costly because of the life expectancy of older persons.