**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**WATERFRONT COMMISSION OF NEW YORK HARBOR; Maher Terminals, Inc.; Sealand Service, Inc.; Landsdell Protective Agency; McRoberts Protective Agency, Inc.; Puerto Rico Marine Management, Inc.; Ellison, Inc.; 36th Street Terminal; Dtr. Distribution Service, Inc., Defendants.**

No. 85 Civ. 7732 (KTD).

United States District Court,
S.D. New York.

April 22, 1987.

As Amended April 23, 1987.

Order on Reconsideration June 5, 1987.

E.E.O.C., New York City, for plaintiff; Robert L. Williams, Susan Anspach, Deborah Reik, of counsel.

Gerald P. Lally, New York City, for defendant Waterfront Com'n of New York Harbor; Robert A. Pin, David B. Greenfield, of counsel.

Lambos, Flynn, Nyland & Giardino, New York City, for defendants, Maher Terminals Inc., Sea-Land Service, Inc., Landsdell Protective Agency, Inc., McRoberts Protective Agency, Inc., Puerto Rico Marine Management, Inc., 36th Street Terminal Corp. and John C. Mandel Security Bureau, Inc.; Richard P. Lerner, William M. Spelman, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

The defendant, the Waterfront Commission of New York Harbor (the "WC") brings this motion for summary judgment against the plaintiff, the Equal Employment Opportunity Commission (the "EEOC") alleging, *inter alia,* that it is not an employer within the meaning of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.* (1982). The WC further moves to dismiss the cross-claims for indemnification asserted against it by the various employer-defendants. Because I find the WC is not an employer under the ADEA its motion for summary judgment is granted. The cross-claims against the WC for indemnity are also dismissed.

The WC was established by an interstate compact between the states of New York and New Jersey in 1953. The compact was approved by Congress and the WC was given the authority to enact regulations having the effect of law. Pursuant to its statutory authority, the WC began requiring that all persons wishing to become pier guards first be licensed by the WC.

As part of its licensing procedures, the WC required that first-time pier guard license applicants be under the age of fifty. In September, 1985 the WC voluntarily amended this regulation to its present form and now permits the licensing of pier guard applicants up to the age of seventy.

In August, 1982, Mr. Leonard Kantor applied for an application to become a pier guard, but was rejected by the WC because he was fifty-one years old. In October, 1982, Kantor filed a charge of age discrimination against the WC with the EEOC. The WC denied any age discrimination. On April 17, 1984, however, the EEOC issued a Letter of Violation. On August 23, 1984, representatives of the WC and the EEOC met for conciliation purposes. The EEOC indicated that in addition to eliminating the age fifty licensing restrictions and supplying Kantor with a license, the WC would be required to pay Kantor back wages of $13,300 plus $85.00 damages per week until Kantor was hired as a pier guard.

In October, 1984, the WC agreed to suspend the age requirements for licensing pier guards and accepted Kantor's application for a pier guard license. After being licensed temporarily, Kantor received a permanent license on July 11, 1985, but the WC refused and continues to refuse to pay Kantor any back wages or damages. Since receiving his temporary license, Kantor has been employed and remains employed as pier guard by the defendant Maher Terminals, Inc. ("Maher"). The EEOC filed this action on October 1, 1985.

## DISCUSSION

The crux of the parties' dispute is whether the WC, in its licensing capacity, is an employer within the meaning of the ADEA. 29 U.S.C. § 630(b) provides in pertinent part:

> The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ... The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States.

The EEOC argues that the WC falls within this definition of employer. The argument, however, ignores the fact that this suit was brought against the WC in its *licensing capacity*. Certainly the WC hires its own employees, but it does not presently and has never in the past hired pier guards.

▮ In *Nat'l Org. for Women v. Waterfront Comm'n*, 468 F.Supp. 317, 320–321 (S.D.N.Y.1979), the court, in considering language essentially identical to that of the ADEA, held that the WC, in its licensing capacity, was not an employer within the meaning of Title VII of the Civil Rights Act.[1] The issue in *Nat'l Org. for Women* was whether the WC was an employer in respect to applicants for cargo checker positions. Only longshoremen registered with the WC were eligible to be hired for these positions. As in the instant case, the WC's role was exclusively as a licensing or registering body. Thus, the court stated, "In its licensing role, the Commission neither pays the wages nor engages the services of persons it registers. Nor does it undertake to obtain workers for employers or jobs for workers. It is, therefore, neither an 'employer' nor an 'employment agency' with respect to persons desiring registration." *Nat'l Org. for Women*, at 320; *see also Lavender-Cabellero v. Dept. of Consumer Affairs*, 458 F.Supp. 213, 214–215 (S.D.N.Y.1978) (city licensing body not an employer under Title VII).

The EEOC argues, however, that the WC through its licensing power so tightly controls an applicant's access to pier guard jobs, that it should be deemed an employer even without a direct employer-employee relationship.

To support its position, the EEOC relies primarily on the Second Circuit's opinion in *Spirt v. Teachers Insurance and Annuity Assoc.*, 691 F.2d 1054 (2d Cir.1982), a case factually distinct from the instant case and one more similar to *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir. 1973).

The plaintiff in *Spirt* was a tenured female professor at a university which had a retirement program managed by the defendants. As a tenured professor her participation in the retirement program was mandatory even though the program paid female retirees less per month than their male counterparts. Although the plaintiff was not an employee of the defendants, the Second Circuit held that:

> [the defendants] which exist solely for the purpose of enabling universities to delegate their responsibility to provide retirement benefits for their employees, are so closely intertwined with those universities, ... that they must be deemed an "employer" for purposes of Title VII. It is also relevant that participation in [the retirement program] is mandatory for tenured faculty members ... and that [the university] shares in the admin-

---

1. Title VII reads in pertinent part:
   (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States,....
   Originally, Title VII's coverage did not extend to the states or their political subdivisions. The exclusion was removed in 1972.

istrative responsibilities that result from its faculty members' participation....
*Spirt*, at 1063.

Similarly, in *Sibley* the plaintiff was a male private duty nurse who was hired directly by patients requiring his services. When a patient at Sibley needed a private nurse, the hospital would refer the patient's request to an organization which kept a registry of private nurses. That organization would contact the nurses and send them to the patients. Plaintiff alleged that the hospital had twice interfered with his employment by refusing to let him report to the patients. Under those circumstances, the court reasoned:

> To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

*Sibley*, at 1341.

■ The crucial distinction between these cases and the instant case is that neither *Sibley* nor *Spirt* involved a state agency which had licensing authority pursuant to an exercise of the states' police power. *Nat'l Org. for Women*, at 321; *George v. Bd. of Veterinary Medical Examiners*, 635 F.Supp. 953, 955 (D.N.J. 1985), *aff'd*, 794 F.2d 113, 114–115 (3rd Cir.1986) (licensing activities by the Board of Veterinary Medical Examiners does not make it an employer under Title VII of the Civil Rights Act); *Woodward v. Virginia Bd. of Bar Examiners*, 420 F.Supp. 211, 212 (E.D.Va.1976), *aff'd*, 598 F.2d 1345 (4th Cir.1979) (State Board of Bar Examiners is not an employer within the meaning of Title VII of the Civil Rights Act); *Haddock v. Bd. of Dental Examiners*, 777 F.2d 462, 463 (9th Cir.1985) (Board of Dental Examiners is not an employer within the meaning of Title VII).

As there is neither a statutory basis nor a basis in case law for finding that the WC, in its licensing capacity, is an employer within the meaning of the ADEA, the motion for summary judgment is granted.

It also appears that Mr. Kantor never applied to any of the employer-defendants sued herein, except the defendant Maher. Although the EEOC claims to be pursuing this case as a class action, it has entirely failed to identify even one other person who might have a claim against any of the employer-defendants. Rather, it appears to me that the EEOC is using this court inappropriately, in effect, to create legislation it believes appropriate. The EEOC's claims against all the employer-defendants, except Maher, are dismissed for failure to state a claim and Susan Anspach, the attorney for the EEOC, is hereby sanctioned pursuant to Fed.R.Civ.P. 11 for filing such factually unfounded claims. Anspach is to be fined in the amount of $500.00. I set the fine at this modest amount in consideration of the attorney's present position with the federal government. The same Federal Rules of Civil Procedure apply to attorneys for the government as apply to private attorneys. The same ethical considerations should delimit the bounds of activity for both private and public lawyers. There can be no distinction between the two when it comes to bringing totally unfounded litigation. Indeed, I should think that an attorney charged with the public's interest, if anything, should be more circumspect in the initiation of this type of litigation where too often the mere charge is equated with "conviction" in the mind of the public.

■ Lastly, I turn to the defendant Maher; that company sponsored Kantor in his application to the WC for a pier guard license. Maher was required by law to hire only licensed pier guards and thus, it could not hire Kantor until he was licensed. Without more, the complaint also fails to state a claim against Maher.

In conclusion, the WC's motion for summary judgment is granted. The action against the other defendants is without foundation and *sua sponte* this court dismisses the plaintiff's complaint in its en-

tirety. Needless to say, the employer-defendants' cross-claims are also dismissed.

SO ORDERED.

### ORDER ON RECONSIDERATION

The plaintiff has moved for reconsideration and reargument of my Memorandum dated April 22, 1987 dismissing this action and imposing sanctions pursuant to Fed.R. Civ.P. 11 on the attorney who signed the complaint. I have reviewed the various memoranda submitted by the parties and have heard oral argument on the motion. The motion for reconsideration is granted. My previous decision on the merits is adhered to. There is little or no basis advanced by the Equal Employment Opportunity Commission ("EEOC") for a change of the ultimate decision dismissing the complaint. It may be true that in dealing with the Waterfront Commission ("WC") the EEOC finds itself in a "Catch–22" position because the WC is not an "employer" within the meaning of the act. That is a legislative problem and not one which can be or should be remedied by the courts.

 The question of the sanctions imposed upon Ms. Anspach is more troublesome. It appears that Ms. Anspach was not directly involved in this matter save in her position as the Supervising Attorney who signed the complaint herein. In doing so she relied upon the investigation done by the EEOC and the facts gathered therein which were sufficient to satisfy the EEOC that the action should be pursued.

The failure to proceed properly lies directly with the EEOC. It would appear that an administrative investigation was done which, at best, might give rise to a suspicion that certain companies had violated the Age Discrimination in Employment Act ("ADEA"). In a situation, however, where an agency has subpoena power and the facilities to do an administrative investigation, more must be required before a complaint is filed and made public. Having worked in the administrative milieu myself, I know that this is not placing an unreasonable burden on the EEOC.

I should also note that while I originally imposed sanctions on Ms. Anspach as the signatory of the complaint, I recognize that she is a careful and capable attorney who unfortunately was at the wrong place at the wrong time. The imposition of sanctions was never intended to be a condemnation of her. Recognizing, however, that some might wrongfully take that view, my Memorandum of April 22, 1987, insofar as it imposed sanctions under Rule 11, is vacated. On the other hand, this case should serve to put government attorneys on notice that they are not exempt from the federal rules and that they will be held to the highest standards of the Bar.

SO ORDERED.