Daniel SILVERMAN, Regional Director of Region 2 of the National Labor Relations Board For and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Plaintiff,

v.

EHRLICH BEER CORP., Defendant.

Irving Ehrlich, President Scott Ehrlich, Respondents in Contempt Proceeding.

No. 87 Civ. 0100 (LBS).

United States District Court, S.D. New York.

Dec. 21, 1987.

N.L.R.B., New York City (Elbert F. Tellem, Acting Regional Director, Carole Sobin, of counsel), for plaintiff.

Arthur Liberstein, New York City, for respondents.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

In this proceeding the National Labor Relations Board ("NLRB" or "Board") attempted to have this court find the respondents in contempt of an order directing them to offer reinstatement to certain employees or to place them on a preferential hiring list and further to post a notice to employees in the work place.

After a full and fair hearing, this court, on June 4, 1987 refused to hold the respondents in contempt and requested that defense counsel submit an affidavit in connection with an award of counsel fees. Defense counsel submitted the requested affidavit on June 8, 1987. It is uncontroverted that the affidavit was served on the NLRB before it was filed with the court.

I waited what I considered a reasonable time (over four weeks) for a response from the NLRB, but none was forthcoming. On July 8, 1987 I filed a Memorandum and Order making findings of fact and conclusions of law and awarding counsel fees to respondents. Specifically I found that:

[n]o credible evidence has been presented that Muniz was discharged or Mendez not rehired for reasons other than that Ehrlich no longer required their services. The NLRB alleges that other employees have been hired to fill the positions at issue, that Ehrlich has contracted out work formerly performed by the discharged employees, that Ehrlich indeed has work that at least some of the discharged employees could perform, and that Ehrlich has not posted the required notice. *However, the NLRB offers no*

*proof of these allegations. No NLRB representative has visited the Ehrlich premises to explore the circumstances.*

Memorandum and Order of July 8, 1987, at 5, (emphasis added).

After the NLRB had finished with its direct case, the respondents put in their evidence. As to the Ehrlichs' defense, I found as follows:

Finally, Ehrlich presents credible evidence, uncontroverted by the NLRB, that it has complied with the March 4, 1987 Order. Ehrlich asserts that for the fiscal year ending June 30, 1986 it made only $5,000 profit. Since then, it claims to have broken even, and may have experienced a net loss. Because of these conditions, Ehrlich claims that the operational changes that terminated the positions of the employees at issue were motivated by a need to increase its efficiency in order to remain in business. Ehrlich also asserts that the notice required by the March 4, 1987 Order was posted on its premises.

Memorandum and Order of July 8, 1987, at 6.

I also awarded counsel fees in the amount of $4,200. This Order clearly terminated the contempt proceeding.

No Notice of Appeal was ever filed. No application for rehearing or reargument of the contempt proceeding was ever made. Instead, on August 7, 1987, the NLRB filed this motion to vacate the award of attorneys fees. The NLRB posits its motion on the following grounds:

1) that the Board did not have the opportunity to respond to respondents' application for attorneys fees (Memorandum of Law of the National Labor Relations Board in Support of Motion to Vacate Award of Attorneys' Fees or in the Alternative Response of Petitioner to Application by Respondent for Attorneys' Fees Pursuant to the Equal Access to Justice Act ("Board's Memo" at 4);

2) that the application was made in the attorney's name rather than in the name of the respondents in the contempt proceeding (Board's Memo at 4–5);

3) that there was no final judgment entered in the proceeding, thus rendering the award premature (Board's Memo at 2–3); and

4) that the initiation of the contempt proceeding was not "unwarranted" because the Board made out a *prima facie* case for contempt and the result depended mostly on credibility (Board's Memo at 5–18).

■ The first three arguments are meritless. The Board cannot argue that it did not have notice of the application or opportunity to respond when Ms. Carol Sobin, the attorney handling this matter for the Board, was present in court when I told defense counsel to file the affidavit for attorneys fees. Proof that the affidavit was served four days later is adequate to establish that someone at the Board had knowledge of the affidavit. It seems clear that the movant here intentionally made a choice not to reply. Having made that choice it ill behooves the Board to complain about not having had an opportunity to respond.

■ The argument that the application is not in proper form because the affidavit is sworn to by the attorney is similarly meritless. Who else could swear to an affidavit concerning how many hours the attorney expended in the defense of the Board's application? Certainly that affidavit could not be signed by the respondents.

■ The argument advanced by the Board that there is no final judgment in this proceeding is likewise meritless. The contempt proceeding is a separate proceeding, ancillary to the main action. If the respondents had been held in contempt, they would clearly have had the right to appeal from a final order. Similarly, my dismissal of the contempt proceeding constituted a final Order from which the Board could have appealed. Since no Notice of Appeal was ever filed by the Board, the dismissal of the proceeding is final.

■ In dealing with the fourth argument raised by the Board, I believe it is necessary to emphasize certain fundamentals which can bear repetition. First, an attor-

ney in the employ of the government is not on the same footing as a private attorney. He or she has the august majesty of the sovereign behind his or her every utterance; the economic power in the hands of some individual government lawyers can wreak total devastation on the average citizen. As a result, the attorney representing the government must be held to a higher standard than that of the ordinary lawyer. This rule is particularly appropriate when the government attorney is bringing charges, even quasi-criminal in nature, against the ordinary citizen. Contempt proceedings are at least quasi-criminal; they can result in fines and imprisonment. In the usual criminal proceeding the public is protected from an over-zealous prosecutor by the institution of the grand jury. There is no such safeguard in a contempt proceeding. Thus, the law must require other safeguards to protect innocent citizens.

■ Fed.R.Civ.P. 11 exists partly to protect against ill-considered and frivolous contempt proceedings. In particular, Rule 11 provides that:

> [t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief *formed after reasonable inquiry* it is well grounded in fact and is warranted by existing law.... (Emphasis added).

Another safeguard is the government's burden of proof. It is more stringent in a contempt proceeding than in an ordinary civil case. It is not enough to prove that the alleged contemnor did the offending act by a fair preponderance of the evidence. The complainant must prove the contempt by clear and convincing evidence.

A final safeguard is Rule 43 of the Local Rules of the Southern District of New York. It provides that upon dismissal of a contempt proceeding "a reasonable counsel fee" may be recovered against the complainant. This rule has applied to all parties except the government, by reason of sovereign immunity, until recently when

the Equal Access to Justice Act ("EAJA") applied that rule to the government. 28 U.S.C. § 2412 (1982 & Supp. III).

■ Thus, the law protects citizens from being named respondents in unwarranted contempt proceedings by requiring:

1) that there be an investigation prior to the time that the contempt proceeding is filed;

2) that the complainant meet a higher standard of proof than that required in an ordinary civil case; and

3) that the complainant face the potential economic sanction of paying reasonable attorneys fees if the proceeding is dismissed.

With these requirements in mind, I turn to set out the reasons for which I required the payment of attorneys fees in this case.

■ First, the attorney handling this matter did not even attempt to do the investigation required by Fed.R.Civ.P. 11. An attorney must do something more than act as a scrivener for his client's complaints; he must do a reasonable investigation to make sure that there is some foundation for those allegations. As I have stated before, Rule 11 applies to the government and government lawyers. *Equal Employment Opportunity Comm'n v. Waterfront Comm'n*, 665 F.Supp. 197, 200, Memorandum & Order of April 22, 1987 (S.D.N.Y.). Here *no* investigation was made. This is not a situation where the attorney and client are bereft of assets. The government has the funds to do an investigation. Indeed, the NLRB has investigators on its payroll. All that would have been necessary was for an investigator to visit the respondent's place of business to determine if the notice was posted and if the respondents had in fact replaced the protected employees. This visit, however, was not made. As far as I can ascertain, a complaint was made by Mendez, obviously an interested person with a great deal of animus for the respondents, and the action was instituted. The absence of any real investigation doomed the proceeding. This does not meet the requirements of Rule 11.

■ As set out in my Memorandum and Order of July 8, 1987 [available on WEST-LAW, 1987 WL 46937]:

> The NLRB alleges that other employees have been hired to fill the positions at issue, that Ehrlich has contracted out work formerly performed by the discharged employees, that Ehrlich indeed has work that at least some of the discharged employees could perform, and that Ehrlich has not posted the required notice. However, the NLRB offers no proof of these allegations.

Memorandum and Order of July 8, 1987, at 5. What a difference it would make if the Board could have pointed to any person hired to fill the positions at issue, to the other parties to the contracts under which the work formerly performed by the discharged employees was contracted out, or to the work that was available for the discharged employees. Contrary to the Board's argument, this is not a question of credibility—this is a total failure of proof.

Accordingly, this contempt proceeding cannot be deemed "substantially justified," as the Board argues. I have already indicated that the case did not meet the requirements of Rule 11. It follows that it cannot be deemed "substantially justified" for purposes of the EAJA. See the comprehensive discussion of this axiom by Chief Judge Weinstein in *Zimmerman v. Schweiker*, 575 F.Supp. 1436, 1440–1 (E.D. N.Y.1983).

■ The only question remaining is whether I calculated the award of attorneys fees properly under the EAJA. The NLRB argues that the award of counsel fees is improper because it exceeds $75 per hour, the rate set by the EAJA. 28 U.S.C. § 2412(d)—(2)(A) (1982 & Supp. III). The short answer to the NLRB's argument is that it comes too late. If the Board was to be heard on this question, it should have made these arguments prior to the time the award was made. Furthermore, the EAJA provides for flexibility in the amount of attorneys fees awarded under the statute in appropriate cases. *Id.* While I am not known for largesse with the federal fisc, this case demands the payment of fees at a rate higher than the ordinary. Because of the NLRB's failure to properly investigate and present this case, the burden fell to the defense attorney not only to defend but also to do the work normally undertaken by the NLRB. Only a skilled attorney, living by the highest standards, would undertake to do this. This was done with tact and without recrimination.

■ Finally, I consider whether attorneys fees should be paid to counsel for respondents for his work resisting this motion by the NLRB to vacate the award of attorneys fees. I am sure that this payment *must* be made. The Court of Appeals for this Circuit has recently reminded us that lawyers are entitled to be compensated for time spent in the application for fees under the EAJA. See *Trichilo v. Secretary of Health and Human Serv.*, 832 F.2d 743, 744–745 (2d Cir.1987) (per curiam). It follows that resisting an untimely and frivolous motion concerning fees under EAJA should also be compensated. A further award of $975 is deemed appropriate.

The Board's motion to vacate the award of attorneys fees is denied. The award is to be increased by $975.

SO ORDERED.