**Monir A. GEORGE, Plaintiff,**

v.

**NEW JERSEY BOARD OF VETERINARY MEDICAL EXAMINERS, et al., Defendants.**

**Civ. No. 85–2488.**

United States District Court,
D. New Jersey.

Nov. 27, 1985.

**954**

Monir A. George, pro se.

Irwin I. Kimmelman, Atty. Gen., Trenton, N.J., for defendants.

## OPINION

LACEY, District Judge.

This motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) presents the issue of whether the licensing activities of the defendants, New Jersey Board of Veterinary Medical Examiners and its named employees (hereinafter Board), come within the terms of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

The Board is charged with the duty and responsibility of regulating the practice of veterinary medicine in the State of New Jersey pursuant to N.J.S.A. 45:16–1, *et seq.* One of its primary responsibilities is the issuance of licenses to practice veterinary medicine in the state. N.J.S.A. 45:16–5.

The plaintiff, Monir George, submitted an application to the Board to be admitted to practice in New Jersey. This application was denied. The plaintiff then went to the Board office to discuss this matter with the executive secretary of the Board, Maurice McQuade. Subsequent to this meeting, an administrative complaint was filed with the Board by the Attorney General charging that the plaintiff had removed from the Board office a file containing various applications and credentials submitted by him in his efforts to become licensed in New Jersey. Plaintiff entered a denial of the charges. At a Board hearing, it was determined that the plaintiff had in fact taken the file from the office without authorization after his meeting with the executive secretary. Based on these findings, the Board ordered that the plaintiff's application for licensure in New Jersey be denied for a period of three years.

No appeal was taken by the plaintiff concerning this decision. However, the plaintiff instituted the present action alleging violations of Title VII. More specifically, he alleges that the Board destroyed or lost his complete file and application and that he has been discriminated against because of his national origin.

Defendants move to dismiss, arguing that they are not employers of the plaintiff, nor are they an employment agency within the meaning of those words as used in Title VII. The plaintiff takes the position that through its licensing activities the Board is an employer or an employment agency under Title VII.

The relevant portion of 42 U.S.C. § 2000e provides:

(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person....

(c) The term "employment agency" means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

As the Supreme Court has noted, the purpose of Title VII is to "assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974).

Some courts have recognized that an entity's control over an employee's access to the job market may result in a finding that the entity is an employer for purposes of

Title VII, even though there may be no direct employment relationship between the employee and the entity. The leading case is *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973). In *Sibley*, the plaintiff was a male private duty nurse who was employed directly by his patients. However, he received his assignments through the hospital: it contacted him when patients requested private nursing services. On two occasions, the supervisory nurses at the hospital prevented him from reporting to the requesting patient because he was a male and the patient was a female. In stressing the control the hospital had over access to the job market, the court found that the hospital was an employer within the meaning of 42 U.S.C. § 2000e. The court stated:

> To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

*Id.* at 1341.

It must be pointed out, as did the court in *National Organization for Women v. Waterfront Commission of New York*, 468 F.Supp. 317 (S.D.N.Y.1979), that the *Sibley* decision "had nothing to do with state police power." *Id.* at 320. Similarly, in *Lavender-Cabellero v. Department of Consumer Affairs*, 458 F.Supp. 213 (S.D.N.Y. 1978), the court noted that *Sibley* did not involve a "state or city licensing agency performing a separate, and presumably necessary public, as opposed to private function, separate and apart from employment itself." *Id.* at 215. Both *National Organization for Women*, and *Lavender-Cabellero* held that where a governmental organization is exercising its police power, the control it exerts over a person's access to the job market does not render the governmental organization an "employer" or "employment agency" within the meaning of Title VII. Both courts rejected the contention that a different result is required by the 1972 amendments to Title VII extending its protection to state and local employees.

*Lavender-Cabellero* involved a city agency which issued licenses to process servers. The court noted: "To say that Congress was unaware of potential employment related problems arising from state and city licensing would be to deny reality. However, Congress chose not to enact provisions which would have extended Title VII in the fashion requested by the plaintiff." 458 F.Supp. at 215 (1978).

In *National Organization for Women*, the plaintiff alleged sex discrimination in the licensing activities of the Waterfront Commission of New York Harbor. The court observed that the legislative history did not suggest that Congress, in removing the exemption for state government employers, intended to benefit anyone other than those actually employed by, or those seeking to be employed by, state governments or their subdivisions. The court stated:

> In its licensing role, the commission neither pays the wages or engages the services of the persons it registers. Nor does it obtain workers for employers or jobs for workers. It is therefore neither an "employer" nor an "employment agency" with respect to persons desiring registration.

*Id.* at 320.

Plaintiff relies on the case of *Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974). In that case, a driver-trainer of harness horses alleged that the state Racing Commission and the state Trotting and Breeding Association discriminated against him on the basis of race by denying stall space and a license necessary for harness horse racing. The Racing Commission was the regulatory agency that was responsible for horseracing activities in the state.

As the court in *Lavender-Cabellero* noted, *Puntolillo* is distinguishable since the relationship between the plaintiff and the

defendant in that case was "primarily one of employment." *Lavender-Cabellero,* 458 F.Supp. at 215. In *Puntolillo,* the defendants actually operated the raceway and had jurisdiction over all facets of harness racing, including maintenance of the track, parimutuel betting, publicity, judging, and the settlement of disputes. *See,* in contrast, *Puntolillo,* 375 F.Supp. at 1090, n. 4. The New Jersey Board of Veterinary Medical Examiners does not control the day-to-day operations of veterinarians in this way. Nevertheless, to the extent that broader language in *Puntolillo* suggests a different result, this court declines to follow it, finding the reasoning of *Lavender-Cabellero* and *National Organization for Women* more persuasive.

This conclusion is buttressed by consideration of cases involving bar examiners. The courts have consistently recognized that state boards of bar examiners are not employers within the meaning of Title VII. For example, in *Delgado v. McTighe,* 442 F.Supp. 725, 730 (E.D.Pa.1977), a class action was brought against Pennsylvania's State Board of Law Examiners alleging racial discrimination contrary to Title VII. The court found that neither the language of the Act nor its legislative history indicated that Congress ever intended Title VII to apply in the situation where applicants sought admission to the bar.

In addition, *Woodward v. Virginia Board of Bar Examiners,* 420 F.Supp. 211, 212 (E.D.Va.1976), *aff'd,* 598 F.2d 1345 (4th Cir.1979) (*per curiam* ), held that Title VII, by its terms, does not apply to the bar examination. The Board of Bar Examiners is neither an "employer," an "employment agency," nor a "labor organization" within the meaning of the Act. 598 F.2d at 1346.

This court concludes that the 1972 amendments to Title VII refer to governmental entities in their role as employers in the customary sense of the word and not in their role as regulators. Accordingly, the defendants' motion to dismiss is granted, and the plaintiff's motion for appointment of counsel is denied.