**Paul F. TYRRELL, Plaintiff,**

v.

**The CITY OF SCRANTON, Fire Fighters Local Union No. 669 The International Association of Fire Fighters AFL—CIO,[1] Harrisburg Area Community College, James P. Connors, individually and as Mayor of the City of Scranton, Harvey Applegate, individually and as Fire Chief of the City of Scranton, Terrence Osborne, individually and as Deputy Chief of Scranton Fire Department, and Kevin B. Nelson, individually and as Fire Training Specialist for the Harrisburg Community College, Defendants.**

No. 3:CV–00–0738.

United States District Court, M.D. Pennsylvania.

March 2, 2001.

1. The union states that its name as of March 2000 is "Fire Fighters Local Union No. 60." There does not seem to be any confusion as to whom Plaintiff has joined in this lawsuit, and no party has moved this court to take any action.

Peter G. Loftus, Waverly, PA, for Paul F. Tyrrell.

Joseph G. Ferguson, Elizabeth Cronin Leo, Ryan C. Blazure, Jennifer Walsh Clark, Rosenn Jenkins, & Greenwald, L.L.P., Scranton, PA, for City of Scranton, James P. Connors, Harvey Applegate and Terry Osborne.

Thomas W. Jennings, Philadelphia, PA, for Fire Fighters Local, Union No. 669.

Jeffrey F. Champagne, McNees, Wallace & Nurick, Harrisburg, PA, Elizabeth A. Maguschak, McNees Wallace & Nurick, Hazleton, PA, Kimberly Colonna, Harrisburg, PA, for Harrisburg Area Community College and Kevin P. Nelson.

2. The motions are titled, respectively, "Motion of Defendant Harrisburg Area Community College and Defendant Kevin B. Nelson for Partial Dismissal of Plaintiff's Amended Complaint Under Fed.R.Civ.P. 12(b)(1) & (6) and for a More Definite Statement Under Fed. R.Civ.P. 12(e)" (Doc. 26); and "Defendant, Fire Fighters Local Union No. 60's Motion to Dismiss Amended Complaint" (Doc. 27).

## MEMORANDUM

CAPUTO, District Judge.

Plaintiff Paul Tyrrell brought the present age discrimination action on April 21, 2000 alleging that he was unlawfully removed from his position as a firefighter for the city of Scranton, Pennsylvania. (Amended Complaint, Doc. 23.) The seven defendants fall into three classes for purposes of this court's analysis: 1) the city of Scranton and its officers ("the city"); 2) the firefighters' union ("the union"); and 3) the Harrisburg Area Community College and its officer ("HACC"). In separate motions, HACC and the union have moved for the dismissal of some or all of Tyrrell's claims for failure to state a claim upon which relief can be granted.[2] HACC has also requested that Tyrrell be required to make a more definite statement of his claims against it. (Doc. 26.) For the reasons set forth below, HACC's motion to dismiss will be granted in part and denied in part; its motion for a more definite statement will be denied; and the union's motion to dismiss will be denied.

## BACKGROUND

Plaintiff Tyrrell was hired by the City of Scranton Fire Department in January of 1997. (Doc. 23 ¶ 12.) Pursuant to the collective bargaining agreement between the city and the firefighters' union, all newly hired firefighters were required to complete the Harrisburg Area Community College Fire Academy. (Id. ¶ 17.) After Tyrrell was unable to complete the Academy due to an injury, the city terminated him on May 13, 1997. (Id. ¶¶ 18–19.) Tyrrell then filed a grievance with the union which resulted in the union brokering his

reinstatement, subject to his successful completion of the Fire Academy. (Id. ¶¶ 20–23.) However, as Tyrrell was unable to satisfy the physical training requirements of the Academy, the city once again terminated his employment on May 12, 1998. (Id.¶¶ 24–26, 32.) According to Tyrrell, the union refused to intervene on his behalf a second time. (Id.¶ 34.)

Tyrrell alleges that Defendants seek to exclude otherwise qualified older persons from city firefighter positions by subjecting applicants to rigorous physical requirements that are not *bona fide* occupational qualifications. (Id.¶¶ 23, 27–31.)[3] Tyrrell was born on August 23, 1955, making him forty-one years of age at the time of his first termination and forty-two years of age at the time of his second termination. (Id.¶ 11.) To buttress his claim that the physical requirements imposed by the city are not *bona fide* occupational qualifications, Tyrrell avers that the city currently employs a number of firefighters over the age of forty who could no longer meet the physical demands of the Fire Academy. (Id.¶ 26.)

The amended complaint asserts a myriad of claims under six different counts. Count I is an age discrimination claim against the city under the federal Age Discrimination in Employment Act (ADEA). (Id.¶¶ 36–39.) Count II contains age discrimination claims against the union under the ADEA and the Pennsylvania Human Relations Act (PHRA). (Id. ¶¶ 40–43.) Count III contains age discrimination claims against HACC under the ADEA and PHRA, as well as under the federal Age Discrimination Act of 1975, the Pennsylvania Fair Educational Opportunities Act, and § 32 of Title 22 of the Pennsylvania Administrative Code. (Id.¶¶ 44–47.) Count IV is a PHRA age discrimination claim against the city. (Id.¶¶ 48–51.) Though Counts V and VI are somewhat redundant, it appears that Count V alleges violations of 42 U.S.C. § 1983 on the part of each defendant based on predicate violations of 42 U.S.C § 1981 and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. (Id.¶¶ 52–63.) Count VI asserts that Defendants violated 42 U.S.C. ¶¶ 1985(3) and 1986 by conspiring to commit or failing to prevent the commission of the predicate civil rights violations mentioned in Count V. (Id.¶¶ 64–66.) Counts V and VI also include claims for attorneys' fees under 42 U.S.C. § 1988. The pending motions argue that many of these claims must be dismissed for failure to state a claim upon which relief can be granted.

## DISCUSSION

Dismissal under Federal Rule of Evidence 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998) (citing *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994)). *See also Heffernan v. Hunter,* 189 F.3d 405, 408 (3d Cir.

---

**3.** As Plaintiff has not alleged facts indicating that he has standing to assert gender or disability discrimination claims, and since he has expressly characterized this action as one to remedy age discrimination (Doc. 23 ¶ 1), this court will exercise its discretion pursuant to Rule 12(f) to order stricken from the amended complaint all reference to Defendants' alleged discrimination on the basis of sex or disability. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Anjelino v. The New York Times Company,* 200 F.3d 73 (3d Cir.1999).

1999). Even before this court turns to the principal claims in Tyrrell's complaint, it is apparent that two of his claims against HACC will not satisfy this standard.

■ Although Tyrrell has invoked the Pennsylvania Fair Educational Opportunities Act (PFEOA), the scope of that statute does not encompass age discrimination. The PFEOA prohibits discrimination in educational opportunity on the basis of "race, religion, color, ancestry, national origin, sex, handicap or disability." 24 P.S. § 5002(a)–(c). As the PFEOA makes no mention of age, Tyrrell's PFEOA claim of age discrimination will be dismissed.

■ Tyrrell also invokes § 32 of Title 22 of the Pennsylvania Administrative Code to support a claim of age discrimination against HACC. However, as HACC notes, there exists no private right of action to enforce § 32. § 32.6, the provision by which the educational equality regulations of § 32 are enforced, provides only that the Pennsylvania Department of Education shall take certain steps to secure the compliance of covered institutions, such as conciliation, mediation, persuasion and sanctions. 22 Pa.Code § 32.6. Because § 32 clearly contemplates only administrative enforcement of its institutional regulations, Tyrrell may not bring a private action to enforce its provisions. Accordingly, this claim will also be dismissed.

### I. ADEA and PHRA Claims Against HACC

■ The ADEA makes it "unlawful for an employer ... to fail to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Likewise, the PHRA prohibits employment discrimination on the basis of enumerated personal characteristics, including age. 43 P.S. § 954(a). Because Title VII, the ADEA and the PHRA have similar purposes and contain parallel provisions, courts use judicial interpretations of Title VII to interpret the ADEA, and in turn use interpretations of both federal statutes in interpreting the PHRA. *See Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir.1996) ("While the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, ... its courts generally interpret the PHRA in accord with its federal counterparts."); *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 752 n. 3 (3d Cir.1983) (Title VII and the ADEA are construed similarly); *Hull v. Rose, Schmidt, Hasley, & DiSalle, P.C.*, 700 A.2d 996, 1000 (Pa.Super.1997) (state courts interpreting PHRA look to federal interpretations of Title VII); *Gottlieb v. Ladd Furniture, Inc.*, 1992 WL 174617, *5 (E.D.Pa.) (Title VII, the ADEA and the PHRA are given parallel constructions).

HACC argues that the ADEA does not furnish Tyrrell with a cause of action against it because Tyrrell was a student attending HACC, not an employee of HACC. (Brief of Defendants HACC and Kevin B. Nelson in Support of Their Motion, Doc. 39 at 8.) The Third Circuit has made statements concerning the ADEA which support this position:

> In addition to its language, the legislative history of this statute evinces the clear legislative intent to prohibit age discrimination by employers against employees and applicants for employment. Therefore, if [the plaintiffs] were not [the defendant's] employees, ADEA is not applicable to their cause....

*EEOC v. Zippo Manufacturing Co.*, 713 F.2d 32, 35 (1983) (citations and internal

quotes omitted). However, the *Zippo* court resolved the issue by determining that the plaintiffs there were independent contractors. *Id.* at 38. As such, it was not essential to the court's holding that the plaintiffs were not the employees *of the defendant,* since the plaintiffs were not employees at all. *See* 29 U.S.C. § 630(f) (defining "employee" as "an individual employed by an employer"); *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (stating that only an "employee" may sue under Title VII, and holding that former employees are "employees"). Consequently, it remains uncertain whether an employee may bring suit under section 623(a) against an employer other than his own.

This issue is also unsettled in the parallel Title VII context. In a leading case, the District of Columbia Circuit held that any employer possessing control over the plaintiff's access to employment with a third party may be liable under Title VII:

> [I]t would appear that Congress has determined to prohibit [an employer] from exerting any power it may have to foreclose, on invidious grounds, access by any individual to employment opportunities otherwise available to him. To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

*Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1341 (D.C.Cir.1973). *Sibley* involved a nurse who was paid directly by his patients but whose conduct and ability to secure clients were under the control of the defendant hospital. *Id.* A number of courts have followed *Sibley,* finding Title VII applicable wherever a defendant employer has control over the plaintiff's access to employment, even where the plaintiff is not employed by the defendant, but by a third party. *See, e.g., Zaklama v. Mt. Sinai Medical Center,* 842 F.2d 291, 294 (11th Cir.1988) (endorsing *Sibley* ); *Hudson v. Radnor Valley Country Club,* 1996 WL 172054, *4 (E.D.Pa.) ("A Title VII plaintiff may sue a defendant with whom he had no actual or prospective employment relationship if that defendant controlled the plaintiff's access to employment and then foreclosed that employment by unlawfully discriminating against the plaintiff.") However, it does not appear that the Third Circuit has adopted *Sibley's* expansive construction of the term "employer."

In *United States v. Bd. of Educ. for the Sch. Dist. of Philadelphia,* 911 F.2d 882, 891 (3d Cir.1990), the Third Circuit held that the Commonwealth of Pennsylvania was not an "employer" of public school teachers—and hence was not subject to the strictures of Title VII—since its control over the teachers' employment was exercised in its regulatory capacity "rather than in the course of a customary employer-employee relationship." At the very least, the court recognized an exception to *Sibley* liability for the state acting in its regulatory capacity. *See also George v. New Jersey Bd. of Veterinary Medical Examiners,* 635 F.Supp. 953, 954–55 (D.N.J.1985) (recognizing same exception); *National Organization for Women v. Waterfront Comm'n of New York,* 468 F.Supp. 317, 320 (S.D.N.Y.1979) (same). But the court also endorsed the district court's determination that the Commonwealth could not be liable under Title VII because "the Commonwealth was not [the plaintiff's] 'employer' within the meaning of Title VII." *Sch. Dist. of Philadelphia,* 911 F.2d at 891. This, combined with the court's

use of the "customary employer-employee relationship" as the standard for determining whether the Commonwealth was the plaintiff's employer, indicates that a plaintiff in the Third Circuit must be employed by the defendant in order to state a claim under Title VII or the ADEA.

A critical Third Circuit decision subsequent to *School District of Philadelphia* is consistent with the conclusion that an employment discrimination plaintiff must share some sort of actual or potential employment relationship with the defendant. Anticipating the Supreme Court's 1997 *Shell Oil* decision, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808, the Third Circuit held in 1994 that a former employee qualified as an "employee" for purposes of Title VII. *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194 (3d Cir.1994). The court's language indicates that its holding is limited to parties that previously were in an employment relationship: "[A]n employee may file a retaliation action against a previous employer for retaliatory conduct occurring after the end of the employment relationship when the retaliatory act is in reprisal for a protected act ... and arises out of or is related to the employment relationship." *Id.*, 25 F.3d at 200. Thus *Charlton* maintained the requirement that there be an employment relationship between the parties, and simply expanded the range of employment relationships protected from discrimination to include past relationships as well as present and prospective ones.

It is clear that federal employment discrimination liability cannot extend to all parties who intentionally and for invidious reasons adversely impact the employment or employment opportunities of a member of a protected class. Nevertheless, cases such as *Sibley* pose a difficult problem for the courts. In *Sibley*, the plaintiff nurse was not under the control of his technical

employer, the patient, but that of the defendant hospital. In cases such as these, where the plaintiff's employer has entrusted a third party with the responsibility to screen and supervise its employees, Congress' clear purpose to prohibit invidious workplace discrimination requires that the third party also be subject to federal employment discrimination liability should it misuse the authority it has been delegated. Potential Title VII and ADEA liability should accompany the transfer of the employer's control and authority.

The Seventh Circuit has crafted a thoughtful middle position between broad liability for all employers who adversely affect a person's employment with a third party, and a strict employment relationship requirement that would immunize from liability the discrimination condemned in *Sibley*. In *EEOC v. State of Illinois*, 69 F.3d 167, 169 (7th Cir.1995), the court rejected the proposition that the ADEA applied to "employers" other than the employer of the plaintiff. *EEOC v. State of Illinois*, 69 F.3d 167, 169 (7th Cir.1995). The court argued that it makes little sense to assume that Congress extended liability only to persons who happen to be employers of third parties, rather than to all persons who improperly exercise control over a plaintiff's employment:

> We think it very doubtful that laws which forbid employers to discriminate create a blanket liability to employees of other employers for interference with their employment relationships. It might be a good idea to impose liability on those who aid or abet violation of those laws, but what sense would it make to confine liability to persons or firms who happen to be employers? Since it would make little sense that we can see ..., we find it implausible to impute to Congress an intention to cre-

ate, by language not at all suggestive of any such intention, aider and abettor liability of one employer to the employees of another employer.

*Id.* The court distinguished such "aiding and abetting" cases from cases such as *Sibley,* where the defendant, though not the plaintiff's employer, nevertheless has such a degree and range of control over the plaintiff that it is the plaintiff's *de facto* or indirect employer. *Id.* In cases involving a *de facto* employer, the relationship of the parties should be regarded as an employment relationship and the provisions of the ADEA should apply to the *de facto* employer. *Id.* A *de facto* employment theory, the court noted, is a more limited and tenable theory than an "aiding and abetting" theory which would impose liability on any employer who adversely affects a plaintiffs employment with a third party. *Id.*

This court finds the reasoning of the Seventh Circuit both persuasive and consistent with the Third Circuit's position that the lack of an employment relationship between the plaintiff and the defendant will preclude liability under Title VII. *See School District of Philadelphia,* 911 F.2d at 891. It is also similar to the line drawn by the Ninth Circuit, which has subjected a defendant to the provisions of Title VII based on the degree of control it exerted over the hiring and supervision of the employer's employees. *See Ass'n of Mexican–American Educators v. California,* 231 F.3d 572, 582 (9th Cir.2000). Therefore this court holds that, in order to state a claim under the ADEA, a plaintiff must allege an actual or *de facto* employment relationship—past, present or prospective—with the defendant.

In the present matter, Tyrrell has alleged only that he was a student at HACC. A community college does not have such control over a student's work life that it can be considered his *de facto* employer. *See Mangram v. General Motors,* 108 F.3d 61 (4th Cir.1997) (distinguishing employees from students in a training program). Consequently, Tyrrell's ADEA claim against HACC must be dismissed for failure to state a claim upon which relief can be granted.

Tyrrell's PHRA claim is on firmer footing. As noted above, the PHRA is construed in light of the ADEA and Title VII. As a consequence, Tyrrell has no claim against HACC under 43 P.S. § 955(a), the provision of the PHRA that parallels the employer discrimination provision of the ADEA, 29 U.S.C. § 623(a). However, in 43 P.S. § 955(e) the PHRA explicitly provides for the sort of general "aider and abettor" liability that, in the federal context, the Third Circuit rejected in *School District of Philadelphia* and the Seventh Circuit found doubtful in *EEOC v. State of Illinois.* Under § 955(e), a plaintiff need not share any sort of employment relationship with the defendant to establish a claim. *See State Employes' Retirement Board v. Pennsylvania Human Relations Comm'n,* 154 Pa.Cmwlth. 55, 622 A.2d 412, 416 n. 6 (Pa.Cmwlth.1993) (under § 955(e) it is not necessary that the defendant be the employer of the plaintiff, since under that subsection even non-employers may be liable for an employment injury caused by its discrimination). Therefore HACC's motion to dismiss Tyrrell's PHRA claim against it will be denied.[4]

---

4. HACC contends that the PHRA claim against it must be dismissed since, once this court has dismissed the federal claims against it, the accompanying state claim should be dismissed for lack of supplemental jurisdic-

tion. (Brief, Doc. 39 at 9.) However, as Tyrrell still has federal claims against the city and the union which share a common nucleus of operative fact with his state claim against HACC, this court has "pendent party" juris-

## II. ADA Claim Against HACC

HACC next asserts that the Age Discrimination Act of 1975(ADA) does not furnish Tyrrell with a cause of action to redress an unlawful employment practice, and that as a consequence Tyrrell's ADA claim must be dismissed. The ADA provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102.[5] Since Tyrrell seeks reinstatement in his position as well as lost wages and benefits for HACC's alleged violation of the ADA, (Doc. 23 ¶ 47), it is clear that his complaint is not with HACC's provision of education and training, but with its participation in the alleged employment discrimination by the city and the union.[6] However, § 6103(c)(1) states, in pertinent part: "Except with respect to any program or activity receiving Federal assistance for public service employment under the Job Training Partnership Act, nothing in this chapter shall be construed to authorize action under this chapter by any Federal department or agency with respect to any employment practice...." HACC contends, and this court agrees, that Tyrrell's ADA claim must be dismissed because 1) § 6103(c)(1) excludes employment discrim-

ination suits from the purview of the ADA; and 2) there exists no private right of action for damages under the ADA.

### A. ADA Inapplicable to Employment Practices

No court has heretofore had occasion to construe § 6103(c)(1), and the provision. itself is decidedly ambiguous. On one hand, the plain language seems to deny a cause of action only to federal departments and agencies. On the other hand, when the ADA—including § 6103(c)(1)—was enacted, the Act was only enforceable by regulatory action. This suggests that Congress, in prohibiting the government from taking action with respect to employment practices, sought to exclude all employment practices from the scope of the ADA.

The language and structure of the statute indicate that Congress expected that the ADA would be enforced almost exclusively by regulatory action. The principal enforcement provision of the ADA, § 6104(a), authorizes "the head of any Federal department or agency" to ensure compliance with the ADA by, *inter alia,* terminating federal assistance for noncompliance. Indeed, until the ADA was amended in 1978 to add a private right of

---

diction over the state claim. *See Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 787 (3d Cir.1995) ("Section 1367(a)'s grant of 'supplemental' jurisdiction was intended to broaden the preexisting scope of what had previously been termed 'pendent' jurisdiction to include claims involving the addition of parties."). Generally, a federal court must exercise jurisdiction over claims which share a common nucleus of operative fact with a claim over which it has jurisdiction, unless one of the factors enumerated in § 1367(c) is present. *Id.* As HACC has not identified a § 1367(c) factor applicable to Tyrrell's claim against it, this court will not exercise its discretion to decline jurisdiction.

**5.** It is assumed for purposes of HACC's motion to dismiss that HACC receives federal financial assistance.

**6.** Perhaps the ADA, unlike the ADEA, allows for "aiding and abetting" liability. Under such a theory, Tyrrell would not need to prove that HACC engaged in an invidious conspiracy with the city, but only that it knowingly facilitated or assisted the city's discrimination against older applicants for firefighter positions. However, in light of this court's holding that the ADA does not cover employment practices, there is no need to reach the "aiding and abetting" issue.

action to seek injunctive relief, administrative action under section 6104(a) was the only mechanism for enforcing the ADA. Consequently, at the time the ADA was enacted, the plain language of § 6103(c)(1) operated to entirely exclude employment discrimination from the scope of the ADA. There is no reason to think that Congress intended to expand the substantive scope of the ADA to include employment discrimination when it subsequently added a private right of action for injunctive relief.

It is also significant that the 1978 amendments made injunctive relief available only after the federal department providing the funding failed to ensure compliance with the Act by administrative action. 42 U.S.C. § 6104(e)–(f) (allowing suits for injunctive relief but requiring exhaustion of administrative remedies). The fact that a plaintiff must first exhaust his administrative remedies before seeking an injunction shows that Congress' preferred remedy for violation of the ADA, even after the 1978 amendments, remained administrative action. It simply not plausible that Congress, when it cut off administrative remedies for employment discrimination, intended to exempt employment discrimination plaintiffs—and only such plaintiffs—from the obligation to pursue administrative remedies. Because it makes little sense to suppose that Congress intended § 6103(c)(1) to limit the Act's coverage for administrative action, its preferred remedy, but not for private action, it is far more likely that section 6103(c) was intended to exclude all employment practices from the purview of the ADA. This intent should control, rather than the infelicitous relationship between language drafted in 1975 and a private right of action added in 1978.

The legislative history of the ADA supports the inference that the Act was intended to proscribe only discrimination in the provision of services by government funded programs, and not discrimination in the employment practices of such programs. The ADA was passed as part of the Older Americans Amendments of 1975, an amendment of the Older Americans Act of 1965(OAA). The principal purpose of the OAA is not to counter employment discrimination: Congress attacked age-based employment discrimination by enacting the ADEA. Rather, the OAA aims at providing older citizens with a broad range of social services. "[T]he Older Americans Act is the only Federal social services law aimed solely at meeting the needs of our Nation's 33 million citizens aged 60 and over. Since its enactment in 1965, it has become the focal point for Federal activity in behalf of the elderly." 124 Cong.Rec. 13,598 (statement of Rep. Watkins, Chairman of the Select Committee on Aging). As noted by Rep. Brademus, principal sponsor of the 1978 revision of the OAA, "a primary objective of the Older Americans Act is to insure that elderly persons are able to obtain services appropriate to their individual needs." 124 Cong.Rec. 13,594. Providing employment services to the elderly is one of the aims of the OAA: "Since the act passed in 1965, elderly persons have benefitted from a number of social, health, nutrition and employment services." 124 Cong.Rec. 13,-601 (statement of Rep. Baldus). But employment services are just a small part of what the OAA seeks to provide to older citizens: "[The OAA] will assist state and local agencies in the development of comprehensive and coordinated services ..., which will include social services, congregate and home delivered nutrition services, multipurpose senior centers, and legal services." 124 Cong.Rec. 13,489 (statement of Rep. Wampler).

Congress' placement of the ADA within the Older Americans Act, a social services statute, rather than within the Age Discrimination in Employment Act, supports

the inference that the ADA was intended to combat age discrimination in the provision of social services by federally funded programs, and was not crafted to prohibit age discrimination in their employment practices. Indeed, such employment discrimination was already unlawful under the ADEA when Congress amended the ADA in 1978 to create a private right to seek injunctive relief. Nor was Congress unaware of the ADEA when it made this amendment; the amended ADA specifically provides that "[n]othing in this chapter shall be construed to amend or modify the Age Discrimination in Employment Act of 1967, as amended, or to affect the rights or responsibilities of any person or party pursuant to such Act." 42 U.S.C. 6103(c)(2). Reading § 6103(c)(2) together with § 6103(c)(1), which forbids administrative action under the ADA with regard to employment practices, and in light of the Congress' placement of the ADA among the social services provisions of the Older Americans Act, it must be concluded that Congress intended the ADA to prohibit only age discrimination in the provision of services by government funded programs, not in the employment practices of such programs. Consequently, since Tyrrell seeks relief for employment discrimination, his ADA claim must be dismissed.

### B. No Private Right to Seek Damages

■ Alternatively, Tyrrell's ADA claim must be dismissed insofar as it seeks monetary damages for violation of the Act. Nothing in the language or legislative history of the ADA either expressly creates or expressly precludes a private right to seek damages for violation of the Act. The question, then, is whether such a right should be inferred. In deciding whether or not to infer a right of action from a statute, the focal point is legislative intent:

In determining whether to infer a private cause of action from a federal stat-

ute, our focal point is Congress intent in enacting the statute.... Unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.

*Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). *See also Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). Nothing in the language, structure or legislative history of the ADA supports the inference that Congress intended to create a private right of action for monetary damages.

The language and structure of the ADA's remedial scheme, embodied in 42 U.S.C. § 6104, is strong evidence that Congress did not intend to provide a private right to seek damages under the Act. As noted above, the ADA's primary enforcement mechanism is administrative action under § 6104(a)–(d). While section 6104(e) does allow an "interested person" to seek an injunction of the discriminatory practice in federal district court, this remedy is available only after the plaintiffs administrative remedies have been exhausted. 42 U.S.C. § 6104(f). No mention is made of a right to bring a damages action, although attorney's fees are expressly allowed to plaintiffs who prevail in a suit for injunctive relief. 42 U.S.C. § 6104(e)(2). In the context of this detailed remedial scheme, in which Congress has expressly provided for administrative remedies as well as a private right to seek injunctive relief, Congress' failure to mention a private right to seek damages weighs heavily against the judicial implication of such a remedy.

[I]t is an elementary canon of statutory construction that where a statute expressly provides a particular remedy or

remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.' Botany [Worsted] Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379.

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19–20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). Congress' detailed remedial scheme provides even for attorney's fees for a private plaintiff who prevails in a suit to enjoin a discriminatory practice. If Congress had wished to allow such a plaintiff to recover damages as well, it certainly knew how to authorize it. As the Supreme Court noted in *Lewis*, express provisions for enforcing statutory duties by administrative and judicial action make it "highly improbable that Congress absent mindedly forgot to mention an intended private action." *Id.* (citations and internal quotes omitted).

■ The legislative history of the ADA also supports the proposition that Congress did not intend to create a private right to seek damages under the Act. The Age Discrimination Act of 1975 was amended in 1978 to add a private right of action for injunctive relief, and the legislative history of the 1978 amendments clearly indicates that no private right of action of any sort existed prior to that time. As the principal sponsor of the amendments observed:

[T]he bill would amend the Age Discrimination Act of 1975 in several ways. [It]

would allow elderly persons who feel they have been the victims of discrimination to seek judicial redress. *Currently, enforcement of the age discrimination law is entirely administrative* and rests with the office of Civil Rights. . . . Because there have been administrative delays in investigating and resolving complaints, giving elderly persons this private judicial right would help in enforcing this important law.

124 Cong.Rec. 13,594 (statement of Rep. Brademus) (emphasis added). However, the legislative history of the 1978 amendments makes no mention of a private right to seek damages. Fairly read, then, the 1978 amendments simply supplemented an "entirely administrative" enforcement regime with a narrowly tailored private right to injunctive relief. Therefore the ADA cannot support an action for damages, and Tyrrell's claim for damages under that statute must be dismissed.[7]

### III. ADEA Claim Against the Union

■ The defendant union avers that the ADEA does not authorize the recovery of monetary damages against a labor organization. (Memorandum of Law in Support of Union's Motion to Dismiss, Doc. 37.) This proposition is said to follow from the fact that the ADEA incorporated the remedial scheme of the Fair Labor Standards Act, a scheme which does not permit a damages action against a union. *See Air Line Pilots Ass'n, International v. Trans World Airlines*, 713 F.2d 940, 957 (2d Cir. 1983). For the reasons set forth below,

---

7. HACC has also raised a sovereign immunity defense to Tyrrell's claims against it. However, only the PHRA claim against HACC will survive the instant motion to dismiss, and the PHRA represents a waiver of sovereign immunity by the Commonwealth. *See Mansfield State College v. Kovich*, 46 Pa.Cmwlth. 399, 407 A.2d 1387 (Pa.Cmwlth.1979) (PHRA employment discrimination suit against state college not barred by sovereign immunity be-

cause "the legislature obviously meant to allow an aggrieved public employee to bring an action against his or her employer, the Commonwealth, for it included the Commonwealth under the term 'employer' in Section 4 of the Act, 43 P.S. s 954"); *City of Philadelphia v. Pennsylvania Human Relations Comm'n*, 684 A.2d 204, 208 (Pa.Cmwlth. 1996) (reaffirming *Kovich*).

this court cannot agree that labor organizations are immune from damages suits under the ADEA.[8]

Section 7(b) of the ADEA states that its provisions "shall be enforced in accordance with the powers, remedies and procedures" of the FLSA. 29 U.S.C. § 626(b). Section 16(b) of the FLSA, in turn, authorizes an employee to bring a private action against an employer, 29 U.S.C. § 216(b), though labor unions are expressly excluded from the definition of "employee" in § 3 of the Act, 29 U.S.C. § 203(d). However, this does not mean that labor organizations cannot be liable for violations of the ADEA. Labor unions may be liable for monetary damages under the ADEA because the FLSA's exemption of labor unions in § 3 was not incorporated into § 7(b) of the ADEA along with § 16(b) of the FLSA.

The distinction critical to the incorporation issue is between the substantive and remedial provisions of the ADEA. While Congress intended to incorporate into the ADEA the remedies and procedures of the FLSA, it adopted the substantive provisions against employment discrimination contained in Title VII. *See Lorillard v. Pons,* 434 U.S. 575, 584–85, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). As a result, the substantive provisions of the ADEA and Title VII differ significantly from those of the FLSA. Though only an employer can be held liable under the FLSA's minimum wage and maximum hour provisions, Title VII prohibits discriminatory practices not just by employers, but also by employment agencies and labor organizations. 42 U.S.C. §§ 2000e–2(a) (prohibited employer practices), 2000e–2(b) (prohibited employment agency practices), 2000e–2(c) (prohibited labor organization practices). Likewise, the ADEA prohibits discriminatory employment practices by employers, employment agencies and labor organizations. 29 U.S.C. §§ 623(a) (prohibited employer practices), 623(b) (prohibited employment agency practices), 623(c) (prohibited labor organization practices). The parallel prohibitions in Title VII and the ADEA, combined with the fact that unions may be liable for damages under Title VII, *see Glus v. G.C. Murphy Co.,* 629 F.2d 248, 255 (3d Cir.1980) (rev'd on other grounds), strongly suggest that Congress intended that unions be liable for damages under the ADEA as well.

Statutory provisions that enlarge or restrict the universe of possible defendants, such as that exempting labor organizations from the FLSA, are substantive in nature because they determine the breadth of the statute's prohibitions and reflect congressional policy as to what sorts of practices should be made unlawful. They differ from remedial provisions which typically specify who may seek relief, what relief is available, and which procedures must be

---

**8.** The Supreme Court raised but declined to reach this issue in *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 119 n. 14, 105 S.Ct. 613, 620, 83 L.Ed.2d 523 (1985). Other courts which have addressed the issue have split on its resolution. *See Air Line Pilots Ass'n, International v. Trans World Airlines,* 713 F.2d 940, 957 (2d Cir.1983) (union cannot be liable for monetary damages); *Nicolaisen v. Chicago and Northwestern Transportation Co.,* 1991 WL 237619 (D.Kan.) (same); *Neuman v. Northwest Airlines, Inc.,* 1982 WL 313 (N.D.Ill.) (same); *EEOC v. Local 350,* *Plumbers and Pipefitters,* 842 F.Supp. 417 (D.Nev.1994) (union may be liable for monetary damages); *Boieru v. Cuyahoga County Library Union,* 1988 WL 106953 (N.D.Ohio) (same); *U.S. EEOC v. Air Line Pilots Association, Int'l,* 489 F.Supp. 1003, 1009 (D.Minn. 1980) (same). A number of other courts, while not specifically holding that a union may be liable for damages under the ADEA, have allowed such suits to proceed to trial. *See, e.g.,* EEOC v. *Local 350, Plumbers and Pipefitters,* 998 F.2d 641 (9th Cir.1992).

followed to secure that relief. Though there may not always be a bright line between the substantive right or prohibition on one hand, and remedial measure on the other hand, the distinction cannot be ignored where, as here, Congress has crafted a statute by drawing on the policies and substance of one act and the remedial scheme of another.

The FLSA's definition of "employer," because it excuses labor unions from the obligation to comply with the substantive prohibitions the Act, is itself a substantive provision. It does not simply preclude a plaintiff from seeking certain remedies for labor union violations, or require that certain procedures be followed before a labor union can be joined in a lawsuit. Rather, it helps to determine what acts will be unlawful under the FLSA.

It is a further indication that the FLSA's exemption of labor unions from liability is substantive—or at least that it becomes so upon being incorporated in the ADEA—that exempting unions from liability would directly conflict with the ADEA's explicit prohibition of discriminatory union practices. It would be patently unreasonable to attribute to Congress an intent to incorporate into the ADEA the FLSA's exemption of unions, given that this would negate the ADEA's express prohibition of union discrimination in 29 U.S.C. § 623(c).[9] Therefore, since the FLSA's exemption of labor organizations is substantive in nature, and since its incorporation into the ADEA would be inconsistent with Congress' evident intent to outlaw age discrim-ination by unions, one must conclude that the exemption was not incorporated into the ADEA as part of the remedial scheme of the FLSA.

Even if it were the case that § 16 of the FLSA, when incorporated into the ADEA's § 7(b), did not authorize an age discrimination plaintiff to seek money damages from a union, § 7(b) should nevertheless be interpreted to allow such suits. Immediately after § 7(b) mentions the FLSA, it provides that "[i]n any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." This provision, then, extends the relief available under the ADEA beyond that authorized by the FLSA. In effect, the ADEA allows an age discrimination plaintiff to seek whatever relief is available under the FLSA *plus* whatever relief, *legal* or equitable, is appropriate to effectuate the purposes of Act. Since the ADEA expressly prohibits age discrimination by unions, allowing money damages against unions undoubtedly effectuates the purpose of the Act. *See U.S. EEOC v. Air Line Pilots Association, Int'l*, 489 F.Supp. 1003, 1009 (D.Minn.1980) ("It would not effectuate the purposes of the ADEA to allow unions to violate the Act without having to be concerned with being held liable for any resulting monetary damages.") Therefore, even if the first part of § 7(b), which refers to the FLSA, does not authorize damages suits against unions, the next part of § 7(b) clearly does.

**9.** 29 U.S.C. § 623(c) states:

It shall be unlawful for a labor organization—
(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his age;
(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individ-ual of employment opportunities, or would limit such employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age;
(3) to cause or attempt to cause an employer to discriminate against an individual in viola-tion of this section.

Accordingly, the court concludes that labor organizations may be held liable for monetary damages under the ADEA. The union's motion to dismiss will be denied.

## IV. § 1981 Claim and Constitutional Claims

■ As noted above, the complaint alleges violations of 42 U.S.C. § 1983 on the part of each defendant based on predicate violations of 42 U.S.C § 1981 and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. (Doc. 23 ¶¶ 52–63.) With the exception of his Fourteenth Amendment claim against the city, all of these allegations fail to state a claim upon which relief can be granted. In the first place, Tyrrell's § 1981 claim fails because only claims of discrimination based on race or ethnicity are cognizable under § 1981. *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 527 (2d Cir.1996); *Von Zuckerstein v. Argonne Nat'l Laboratory*, 984 F.2d 1467, 1472 (7th Cir.1993). Further, the First and Fourth Amendment claims must be dismissed because Tyrrell has failed to allege facts constituting an abridgement of a First Amendment right or an unreasonable search or seizure. The Fifth Amendment claim must be dismissed because the only clause in that amendment which could possibly apply to the facts alleged in the complaint is the Due Process Clause, and that provision applies only against the federal government. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996).

With regard to the Fourteenth Amendment, Tyrrell has stated no claim under the Equal Protection Clause, as age-based classifications are not suspect. *Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991). Further, because Tyrrell has not indicated what process he was denied that HACC could have provided, he has not stated a due process claim against HACC. Likewise, Tyrrell has not stated a due process claim against the union, since he has not alleged facts indicating that the union was acting under color of state law or otherwise was draped in the authority of the state when it allegedly refused to file a grievance on Tyrrell's behalf. *See Jackson v. Temple University*, 721 F.2d 931, 933 (3d Cir.1983) (no state action where union refused to pursue the plaintiffs grievance to arbitration). On the other hand, reading the complaint liberally, Tyrrell has succeeded in stating a due process claim against the city for failure to afford him the pre-termination trial that state law guarantees to all regularly appointed firefighters. 53 P.S. § 30471. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("Property interests ... are created and their dimensions are defined ... from an independent source such as state law...."). In light of the above, all of Tyrrell's § 1983 claims will be dismissed with the exception of his due process claim against the city.[10]

---

**10.** It is also worthy of note, though the issue was not raised by the litigants, that the ADEA cannot be the basis of a § 1983 or § 1985(3) claim, since otherwise a plaintiff could circumvent the elaborate procedural and administrative requirements that Congress sought to make prerequisites to judicial action under the ADEA. *See Great American Federal Savings and Loan Ass'n v. Novotny*, 442 U.S. 366, 376–78, 99 S.Ct. 2345, 2351–52, 60 L.Ed.2d 957 (1979) (Title VII contains a detailed and specific administrative scheme, and "[u]nimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)."); *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 527 (2nd Cir.1996) ("The similar mechanism for enforcement and conciliation of claims under the ADEA, e.g., compare 42 U.S.C. § 2000e–5(b) with 29 U.S.C. § 626(b), persuades us that a violation of the ADEA likewise cannot be a basis for a claim under § 1985(3)."); *Zombro v. Baltimore City Police Department*,

## V. Claims Under 42 U.S.C. § 1985(3) and § 1986

42 U.S.C. § 1985(3) prohibits conspiracies by two or more persons to deprive another person of his civil rights. Just as § 1983, § 1985(3) is an enforcement provision applicable only where the plaintiff succeeds in establishing an independent violation of federal law. Therefore, in light of the discussion in part IV above, Tyrrell's § 1985(3) claim can only be founded on a violation of his Fourteenth Amendment due process rights.

A § 1985(3) plaintiff must allege specific facts showing invidious, purposeful and intentional discrimination. The Third Circuit has upheld dismissal of a § 1985(3) claim where the conspiracy allegations were unsupported by specific facts:

> With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals.

*Robinson v. McCorkle,* 462 F.2d 111, 112 (3d Cir.1972) (citations and internal quotes omitted). In the present case, Tyrrell has failed to alleged specific facts that, if proved, would establish that the city of Scranton engaged in an intentional, invidi-

ous conspiracy with a third party to deprive him of his employment without the trial mandated by state law. Accordingly, he has not succeeded in stating a valid claim under § 1985(3).

§ 1986 prohibits neglecting or refusing to thwart a § 1985(3) conspiracy when it is within one's power to do so. Because a § 1986 claim depends on the existence of a § 1985(3) conspiracy, Tyrrell's failure to allege facts indicating that such a conspiracy existed requires that his § 1986 claim also be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Although a great many of Tyrrell's claims will be dismissed today pursuant to Federal Rule of Civil Procedure 12(b)(6), many will remain, and a brief summary of the surviving claims may be helpful. Count I remains an ADEA claim against the city and its officers. Count II will contain an ADEA claim and a PHRA claim against the firefighters' union. Count III will contain a PHRA claim against HACC and Nelson. Count IV remains a PHRA claim against the city. Count V will contain a § 1983 claim against the city for denial of due process, as well as an accompanying § 1988 claim for attorney's fees. Finally, no claim will remain under Count VI.[11]

An appropriate order will follow.

---

868 F.2d 1364, 1366–68 (4th Cir.1989) (using the same reasoning, and holding that the ADEA cannot be the basis of a § 1983 claim).

**11.** Defendant HACC insists that the allegations in the complaint are so unclear that it cannot properly respond to them, and moves this court to require Tyrrell to make a more definite statement. (Doc. 26 ¶¶ 42–50.) In particular, HACC contends that it cannot determine whether or not the complaint alleges that each of the individual defendants had an agency or employment relationship with HACC or acted at the direction of HACC. This

court believes that Tyrrell has made allegations of sufficient specificity to alert HACC to the substance of his claims, especially given that only the PHRA claim will survive today's decision. Tyrrell has indicated that HACC and Nelson have aided and abetted the alleged age discrimination of the other defendants by designing and implementing a Fire Academy in a manner calculated to exclude older persons from employment as firefighters. (Amended Complaint, Doc. 23 ¶¶ 28–31.) Prior to the discovery phase of this litigation, the details of how this was allegedly done are

## ORDER

NOW, this 2nd day of March, 2001 IT IS HEREBY ORDERED that:

1. The motion to dismiss of Defendants HACC and Nelson (Doc.26) is **GRANTED** with regard to:

   a) the claim in Count III for violation of the PFEOA, 24 P.S. § 5002;

   b) the claim in Count III for violation of 22 Pa.Code § 32;

   c) the claim in Count III for violation of the ADEA;

   d) all claims against all defendants in Counts V and VI (i.e., the claims under 42 U.S.C. §§ 1983, 1985, 1986 and 1988), with the exception of the § 1983 and § 1988 due process claims against Defendants Connors, Applegate, Osborne and the city of Scranton;

2. The motion to dismiss of Defendants HACC and Nelson (Doc. 26) is **DENIED** with regard to the claim in Count III for violation of the PHRA;

3. The motion for a more definite statement of Defendants HACC and Nelson (Doc. 26) is **DENIED;**

4. The motion to dismiss of Defendant Fire Fighters Local Union No. 669 (Doc. 27) is **DENIED.**

5. All reference in the complaint to Defendants' alleged sex or disability discrimination shall be **STRICKEN** pursuant to Fed.R.Civ.P. 12(f).

more accessible to HACC than to Tyrrell. As Tyrrell has done all that can reasonably be expected of him, HACC's motion for a more definite statement will be denied.